# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2038

_____

| | | |
|---|---|---|
| Schaller Telephone Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Golden Sky Systems, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  February 13, 2002

Filed:   July 31, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case deals with the aftermath of failed negotiations between Schaller Telephone Co. (Schaller) and Golden Sky Systems, Inc. (Golden Sky) for the sale of Schaller's rights to provide DirecTV satellite television services in four northwest Iowa counties. Schaller sued Golden Sky for fraudulent nondisclosure, breach of contract, and fraudulent misrepresentation. Golden Sky counterclaimed for unjust enrichment. The district court[1] dismissed Schaller's fraudulent nondisclosure claim

---

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

and granted summary judgment to Golden Sky on Schaller's breach of contract and fraudulent misrepresentation claims and on Golden Sky's counterclaim. Schaller has appealed from those rulings. We affirm.[2]

## I.

Golden Sky first expressed interest in purchasing Schaller's DirecTV service rights in the fall of 1998. After preliminary discussions, Golden Sky sent a formal letter of interest to Schaller on March 9, 1999. Golden Sky's chief rival, Pegasus Communications Corporation (Pegasus), made a better offer shortly thereafter. Golden Sky responded with an even better offer in a second letter of interest on May 26, 1999, in which it conditionally offered to purchase Schaller's rights for $2,700 per subscriber for a minimum of 4,100 subscribers. In the negotiations that followed, the price per subscriber remained the same.

For the next several months, Golden Sky and Schaller negotiated over the proposed transaction. Representatives of each company met several times, spoke several times by telephone, and exchanged numerous drafts of proposed asset purchase agreements and other documents. Ultimately, on September 23, 1999, Golden Sky's counsel sent a letter to Schaller stating that Golden Sky had determined not to go through with the transaction.

The contents of the various contacts between the parties form the basis for this lawsuit. Schaller argues first that Golden Sky fraudulently failed to disclose important facts to Schaller. Second, Schaller claims that the parties formed an oral contract. Finally, Schaller claims that Golden Sky fraudulently misrepresented certain facts.

---

[2]Although included in its notice of appeal, Schaller has raised no issue on appeal regarding the counterclaim award, and thus that award is also affirmed.

**II.**

Schaller's first claim is that Golden Sky failed to disclose material facts to Schaller, specifically, that Golden Sky failed to disclose that it was unable to acquire financing for the transaction. The district court dismissed this claim under Fed. R. Civ. P. 12(b)(6), concluding that Schaller had not alleged any facts that would demonstrate a special relationship between the parties that would have imposed upon Golden Sky the duty to disclose that information to Schaller.

We review de novo a district court's grant of a motion to dismiss for failure to state a claim. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can not prove any set of facts in support of his claim that would entitle him to relief. Id. When analyzing the adequacy of a complaint's allegations under Fed. R. Civ. P. 12(b)(6), we must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff. Id.

Iowa law recognizes a cause of action for fraudulent misrepresentation based on nondisclosure of material facts. Sinnard v. Roach, 414 N.W.2d 100, 105 (Iowa 1987). To be actionable under Iowa law, a misrepresentation must "relate to a material matter known to the party . . . which it is his legal duty to communicate to the other contracting party whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances." Id. (quoting Wilden Clinic Inc. v. City of Des Moines, 229 N.W.2d 286, 293 (Iowa 1975)).

The Iowa Supreme Court has stated that "[t]here is no specific test for determining when a duty to reveal arises in fraud cases. However, . . . '[a] misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth

respecting a material fact involved in the transaction." Clark v. McDaniel, 546 N.W.2d 590, 592 (Iowa 1996) (internal citation omitted) (quoting Kunkle Water & Elec., Inc. v. City of Prescott, 347 N.W.2d 648, 653 (Iowa 1984)).

The district court dismissed the fraudulent nondisclosure claim because it found that Schaller pled no facts which would give rise to a relationship between the parties that created a duty to disclose facts. Citing section § 551(2)(a) of the Restatement (Second) of Torts, the district court found that Schaller and Golden Sky were sophisticated business entities engaging in arm's length negotiations and determined that Iowa law does not impose a duty to disclose in such a situation. Schaller does not dispute these rulings as such, but instead contends on appeal that the district court incorrectly limited its analysis to one theory of a relationship between the parties. Schaller claims that the district court should have considered three alternative standards under which Golden Sky would have had a duty to disclose: 1) inequality of condition and knowledge between the parties, 2) facts basic to the transaction relied on by the other party as described in Restatement § 551(2)(e), and 3) new knowledge acquired by Golden Sky that made its prior representations false as described in Restatement § 551(2)(c).

First, Schaller argues that an inequality of condition and knowledge between the parties as to Golden Sky's financial condition created a duty to disclose facts regarding that condition. Schaller, however, did not plead that this inequality created a special relationship between the parties, nor did it argue so to the district court. Schaller's complaint lists only the following bases for a special relationship between the parties:

> Golden Sky's superior knowledge of the procedure for the acquisition or sale of the rights to supply DIRECTV satellite television services, Schaller's sharing of confidential information regarding Schaller's business and financial circumstances in order to consummate a sale of Schaller's satellite television rights . . ., Schaller's forbearance from

-4-

further pursuing and securing a profitable contract for the sale of Schaller's properties to Golden Sky's competitors, and Schaller's expenditure of substantial sums at Golden Sky's request to increase Schaller's subscriber base.

Schaller's memorandum of law in response to Golden Sky's motion to dismiss repeats only these reasons for a special relationship. Nowhere did Schaller argue anything regarding inequality of condition and knowledge to the district court. We will not hear issues first raised on appeal, Cronquist v. City of Minneapolis, 237 F.3d 920, 925 (8th Cir. 2001), and so we decline to consider this argument.

In any event this argument fails on the merits. Schaller has never alleged any facts other than those that exist in a typical arm's length business deal. The cases it relies on all involve parties who rely on specific, technical expertise of the other party or other specialized information provided by a party. See, e.g., Clark, 546 N.W.2d at 592-93 (seller of car liable for failing to disclose that car was composed of the front of one car and the back of another "clipped" together); Kunkle, 347 N.W.2d at 653 (plumber held liable to city for failing to disclose when asked about needed repairs on its water system that the entire system would likely need to be replaced); Peoples Bank & Trust Co. v. Lala, 392 N.W.2d 179, 188 (Iowa App. 1986) (bank in special relationship with mortgagor of homestead). Schaller cites to no Iowa case holding that a sophisticated business entity has a duty to disclose facts regarding its financial condition to another business entity as part of an arm's length negotiation. Cf. Sinnard, 414 N.W.2d at 106-07 (bank officer owed no duty of disclosure to plaintiff who pledged personal property as collateral for a loan to a corporation regarding the debts of a corporation where the plaintiff was the secretary of that corporation); Wilden, 229 N.W.2d at 293 (city cannot be held liable for failing to disclose to plaintiff that it was the sole bidder on a parcel of land).

We also note that Schaller bases the arguments it raises throughout its appeal on publicly filed information regarding Golden Sky. This information was available

to Schaller at all times, and we do not believe that Iowa law recognizes a cause of action based upon nondisclosure where the information in question was not "peculiarly" within the knowledge of Golden Sky.  See Sinnard, 414 N.W.2d at 107.

Second, Schaller claims that Golden Sky had a duty to disclose under Restatement (Second) of Torts § 551(2)(e), which provides that a party must disclose

> facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of the facts.

Schaller did not specifically cite to this standard or use similar language in its complaint or its memorandum of law in opposition to Golden Sky's motion to dismiss.  It did, however, in its memorandum of law quote a district court case in which the court discussed the standards under § 551(2)(e), Jones Distributing Co., Inc. v. White Consolidated Industries, Inc., 943 F. Supp. 1445, 1447-48 (N.D. Iowa 1996).  Assuming that Schaller adequately called the district court's attention to this contention, the argument fails.  As discussed above, Schaller does not allege facts sufficient to establish a relationship between the parties or other circumstances under which it could reasonably expect Golden Sky to disclose its financial condition.  See id. at 1476 (existence of a fact basic to the transaction that would affect a party's desire to enter the transaction insufficient standing alone, there also must be some facts indicating some special relationship between the parties).

Finally, Schaller argues that Golden Sky had a duty to disclose facts under Restatement (Second) of Torts § 551(2)(c), which provides that a party must reveal "subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so."   Schaller contends that early in the negotiations Golden Sky represented that it had the financial ability to complete the deal and that upon later discovering that it had

-6-

defaulted on some of its loan covenants, it became obligated to inform Schaller that it no longer had the financial capacity to purchase Schaller's satellite broadcast rights. Again, however, Schaller failed to plead any facts that would support this theory or to make any arguments to the district court regarding this theory. Schaller's complaint alleged only that Golden Sky "failed to disclose to Schaller that Golden Sky was either unwilling or financially unable to complete the purchase agreement." Schaller never referred to any particular representations that Golden Sky made and later discovered were false.

In any event, the § 551(2)(c) claim is without merit. The representations by Golden Sky listed in Schaller's complaint do not relate to Golden Sky's financial ability to perform the transaction, but rather to its intention to enter a contract.

Accordingly, the district court did not err in ruling that Golden Sky had no duty to disclose information to Schaller, and thus it correctly dismissed the fraudulent nondisclosure count.

## III.

Next, Schaller argues that the district court erred by granting summary judgment against it on its breach of contract claim.

We review the district court's grant of summary judgment de novo. Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

Iowa recognizes the validity of oral contracts, even in those cases in which the parties intend to commit their agreement to writing. The Iowa Supreme Court has stated:

It is generally held an oral agreement may be enforceable, even though the parties contemplate that it be reduced to writing and signed, if it is complete as to its terms and has been finally agreed to. Under such circumstances the writing is merely an expression of a contract already made. On the other hand, the parties may intend that obligation should arise *only* upon the signing of a written instrument embodying the terms they have tentatively agreed to.

Faught v. Budlong, 540 N.W.2d 33, 35-36 (Iowa 1995) (emphasis in original) (quoting Elkader Coop. Co. v. Matt, 204 N.W.2d 873, 875 (Iowa 1973)). The Faught court cited with approval the comments to Restatement (Second) of Contracts § 27, which provide:

a. Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.

b. On the other hand, if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreement do not constitute a contract.

c. Among the circumstances which may be helpful in determining whether a contract has been concluded are the following: the extent to which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations. Such circumstances may be shown by oral testimony or by correspondence or other preliminary or partially completed writings.

Although parties may make an oral contract that includes a requirement to memorialize the contract in writing, "an agreement to agree is not a contract" in Iowa. Whalen v. Connelly, 545 N.W.2d 284, 293 (Iowa 1996). "In order to find that an oral contract existed, there must be sufficient evidence of its terms to ascertain the duties and conditions established." Audus v. Sabre Communications Corp., 554 N.W.2d 868, 871 (Iowa 1996). Generally, whether the parties intend an oral agreement to be binding or whether they did not intend to be bound until they executed a written agreement is a question of fact dependent upon all the circumstances present in the particular case. Elkader, 204 N.W.2d at 875. Even though the existence of an oral contract is usually a question of fact, judgment as a matter of law is appropriate if a party has not offered sufficient evidence to support the existence of a contract. See, e.g., Faught, 540 N.W.2d at 40 (length of negotiations, number of proposal and counterproposals, and distrust between parties indicate that no reasonable person would find that a contract existed); Desy v. Rhue, 462 N.W.2d 742, 746 (Iowa App. 1990) (where purchase agreement clearly stated that party must sign in order to be bound, no oral contract possible).

The district court held that the negotiations between Golden Sky and Schaller had not ripened into an oral contract because Golden Sky repeatedly represented that it would not be bound absent a written agreement. The district court concluded that the evidence fell within comment b rather than comment a, to the Restatement (Second) of Contracts § 27. Golden Sky's two letters of interest, on March 9, 1999, and May 26, 1999, expressly stated that the price offered was "conditional upon [a specified number of subscribers at closing] and that the parties negotiate and execute a mutually acceptable purchase agreement which would contain representations and warranties standard in the industry . . . ." Both letters also stated that "[t]here are many terms and conditions for sale which need to be agreed upon to finalize an agreement" and "you should understand that this letter is not and is not intended to be, construed or relied upon as a commitment on the part of [Golden Sky]. Any commitment which we may subsequently determine to extend would be pursuant to the definitive documentation referred to above." Golden Sky also sent a letter of intent on July 23, 1999, which indicated the parties' intention to "begin immediate, good faith negotiation between them of an 'Asset Purchase Agreement,' which will embody the terms and conditions contained herein and such other conditions, covenants, representations and warranties which may be agreed upon between the parties and as are customary in acquisitions of this type." Finally, a draft letter of September 3, 1999, stated that the letter was "not to be construed as an offer from [Golden Sky] but is instead intended to be a nonbinding expression of the parties' intentions with respect to entering into an asset purchase agreement memorializing the above-referenced transaction."

Schaller argues that the district court erred in finding that these disclaimers conclusively established that the parties did not intend to enter an oral contract. It argues that various other statements made by Golden Sky's representatives indicate that the parties had reached an oral agreement, and it contends that the district court improperly weighed the evidence instead of viewing it in the light most favorable to

-10-

Schaller. Schaller points out that on June 30, 1999, Steve Jensen, counsel for Schaller, and Jo Ellen Linn, general counsel for Golden Sky, met in Council Bluffs, Iowa, and agreed that Golden Sky would pay $2,700 per subscriber for up to 5,000 subscribers. Representatives of the parties met again on August 25, 1999, at which time Schaller claims that Golden Sky represented that the deal was done, contingent on the approval of Golden Sky's board. On August 26, 1999, the board approved a resolution authorizing Golden Sky's management to go forward with negotiating and completing the transaction. During a telephone conference on September 3, 1999, Ronald Weary, president and CEO of Golden Sky said, "We're going to buy your assets. I'm a man of my word and we intend to go forward with your agreement." Schaller contends that all of the terms and conditions agreed to by the parties were incorporated into a draft asset purchase agreement sent by Golden Sky to Schaller on September 21, 1999. Then, in a letter dated September 23, 1999, Golden Sky informed Schaller that its board had decided not to go forward with the transaction.

We agree with the district court that these claims and the evidence presented by Schaller do not raise issues of material fact sufficient to preclude summary judgment. No reasonable jury would conclude, even taking the evidence in the light most favorable to Schaller, that the parties had concluded an oral agreement.

First, Golden Sky's repeated written statements that it did not intend to be bound are indistinguishable from the statements in Desy, except that Golden Sky's statements might more clearly indicate that it did not intend to be bound in the absence of a signed, written agreement. See Desy, 462 N.W.2d at 746. As the district court concluded, the evidence in this case falls within comment b to § 27, not comment a.

Second, the other statements and actions by Golden Sky that Schaller relies on to counteract the effect of the disclaimers are indistinguishable from those in Faught. In Faught, the Iowa Supreme Court affirmed the trial court's grant of judgment notwithstanding the verdict where the parties were sophisticated business persons, they engaged in long, complex negotiations, the deal was over a relatively large amount of money ($130,000), one party had a boilerplate agreement it used for similar deals, and any "reasonable person would expect that such an agreement would usually be put in writing." Faught, 540 N.W.2d at 40; see also Restatement (Second) of Contracts § 27, comment c (listing factors to consider in whether it would be reasonable to conclude that the parties intended to be bound without a signed, written agreement). Similar factors are involved in this case. We note especially that Schaller does not claim that the parties came to an oral agreement at any one meeting, but instead it relies on various statements over a course of several months. After each of the statements Schaller claims established a contract between the parties, the parties continued to negotiate terms fundamental to the contract, most notably the definition of "subscriber." In the September 21 draft proposed purchase agreement, which Schaller claims contains all the terms of the oral contract, Golden Sky made several changes to the definition of subscriber and noted on the draft, "This section needs work." Furthermore, Schaller admits that its president, Steven Reimers, never saw this draft of the agreement and acknowledges that Reimers was the only person with the authority to bind Schaller to a contract.

In short, Schaller plucks disconnected statements from various meetings and phone calls in an attempt to establish the existence of an oral contract. Schaller's theory is not tenable under Iowa law, nor does it make sense in the real world of contract negotiation. If Schaller's evidence were held adequate to establish an oral contract, it would be rarely the case that any failed contract negotiation could not, through the use of selective excerpts of the negotiations, be contorted into an oral contract.

-12-

## IV.

Schaller also argues that the district court erred in granting summary judgment to Golden Sky on Schaller's fraudulent misrepresentation claim.

Under Iowa law, to establish a claim for fraudulent misrepresentation, a plaintiff must prove:

> (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages.

Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 400 (Iowa 2001).

Additionally, the Federal Rules of Civil Procedure require a plaintiff to plead "the circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b). We interpret this rule of pleading "in harmony with the principles of notice pleading." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Id. Thus, a plaintiff must plead "'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" Id. (quoting Bennett v. Burg, 685 F.2d 1053, 1062 (8th Cir. 1982), adhered to on reh'g

710 F.2d 1361 (8th Cir.) (en banc)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995).

The district court engaged in a lengthy, most thorough analysis of Schaller's pleadings and interrogatory responses in an attempt to determine the basis of Schaller's fraud claim. Schaller pled that certain representations made by Golden Sky were fraudulent, listed a limited set of those representations in response to an interrogatory asking for the basis for its fraud claim, and then included in an unsworn amendment to its interrogatory answer new representations that were not set forth in either the complaint or the first interrogatory answer. The district court considered only the information in Schaller's first set of interrogatory answers to be properly before the court, holding that Schaller was bound to the allegations in its sworn interrogatory answers and so waived any allegations in its complaint that were not contained in its interrogatory answers. We need not reach the merits of this ruling, because we conclude that Schaller did not introduce sufficient evidence to prevent summary judgment on any of the allegations in its complaint.

We agree with the district court that the only paragraph in Schaller's complaint that could arguably be read to plead with the requisite particularity that Golden Sky misrepresented its ability to enter the contract is paragraph seven, which relates only to Golden Sky's letter of May 26, 1999. None of Schaller's evidence would prove that on May 26, 1999, Golden Sky knew that it could not obtain financing to complete the transaction. Thus, summary judgment was properly entered against Schaller on the claim of fraudulent misrepresentation.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.