# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1016

_____

Patrick D. Kelly,                                    *
                                                     *
        Appellant,                          *
                                                     *  Appeal from the United States
    v.                                            *  District Court for the
                                                     *  Eastern District of Missouri.
Marc Golden,                                         *
                                                     *
        Appellee.                           *

_____

Submitted:  September 10, 2003

Filed:  December 8, 2003
_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

     This is an appeal from the district court's order granting summary judgment on appellee's counterclaims and motions for attorney's fees, punitive damages and injunctive relief, and denying appellant's motion to compel arbitration. We affirm in part and reverse in part.[1]

_____

    [1]Appellee's motion for leave to file cross-index is granted. In response to appellant's motion to strike portions of the record, we have considered the portions of the record regarding the amount of attorney's fees awarded, but have not considered any materials related to subsequent contempt proceedings.

I.

Patrick D. Kelly and Marc Golden met in law school in 1977-1980. Kelly later developed and obtained a series of patents for zinc salts used as antiviral additives. Kelly enlisted Golden's help for the financing and marketing of his products, and the two signed an agreement memorializing their business relationship in February of 1997. Kelly granted Golden partial rights to his patents and agreed to share both income and expenses. Their working relationship began to unravel in early 2000, and Kelly brought an action against Golden in federal court in December 2000.

Kelly and Golden signed a superseding agreement (the SA) in January 2001, terminating and replacing the 1997 agreement. Clause 1 of the SA conveys Golden's interest in Kelly's patents back to Kelly. Clause 4 states that Kelly agrees to dismiss his complaint with prejudice. Clause 5 provides that Golden will receive a royalty and other payments. Clause 6 contains a "Mutual Release and Confidentiality Undertaking" that releases the parties from all claims then or previously held, includes an agreement not to make or authorize disparaging, derogatory, or defamatory comments about one another and provides that they will not discuss, disclose, or release any information related to the 1997 agreement or the SA unless it is privileged, within arbitration proceedings, made with consent, or required by law. Finally, clause 11 states that the parties will use binding arbitration to resolve their disputes and will not file a civil lawsuit or equitable action in any court against the other party except to compel or enforce arbitration.

Following the execution of the SA, the district court dismissed the lawsuit with prejudice at Kelly's request. Kelly soon discovered that a company Golden had negotiated with to market their patents was in financial trouble, and he blamed Golden for losing a potential contract with another client. Rather than seeking arbitration under clause 11, Kelly filed suit against Golden in St. Louis, Missouri,

County Court.  Golden removed the case to federal district court and filed an answer and counterclaims.  The parties consented to a bench trial before a magistrate judge.

Kelly, proceeding *pro se*, consistently filed lengthy pleadings containing irrelevant and scandalous allegations that reflected his anger and personal feelings regarding the case.  He frequently referred to Golden and his counsel as liars.  The district court warned Kelly, both in the Rule 16 Conference and in subsequent orders, that he should refrain from such personal attacks.  It struck an unnotarized "affidavit" by Kelly that contained "impertinent and scandalous matter" that was "wholly irrelevant" and also struck portions of Kelly's supplement and amendment to his original pleadings that contained "vicious and highly personal attacks . . . [that could] only have been included to embarrass, harass and oppress defendant and to prejudice the court."

Notwithstanding the district court's warning, Kelly's subsequent pleadings included numerous personal attacks on Golden unrelated to the legal issues and sought to misuse discovery procedures.  The district court rejected Kelly's attempt to depose some of Golden's friends, characterizing it as an "attempt to vilify defendant in front of his friends."  Not content to confine his attacks to the courtroom, Kelly sent Golden and Golden's counsel inappropriate letters and faxes during the period December 2000 and February 2002 that contained numerous inappropriate, vituperative, and coercive comments, along with arguably defamatory statements.  Although he continued to insist that his purpose was to remove obstacles to his ability to make his product available to the world and thus reduce the spread of HIV/AIDS, Kelly's words and actions reflected a personal vendetta against Golden.

The district court held the SA to be valid and enforceable and granted Golden summary judgment on Kelly's recision and breach of fiduciary duties claims.  Golden then amended his counterclaims and moved for summary judgment, an injunction, punitive damages, and attorney's fees.  Kelly then retained counsel and sought to

compel arbitration. The district court denied arbitration as having been waived, granted summary judgment for Golden on two of his breach of contract counterclaims and his prima facie tort counterclaim and granted attorney's fees in the amount of $134,472.50, plus costs, and punitive damages in the amount of $5,000.00. The court enjoined Kelly from making any further disparaging, derogatory, or defamatory statements.

## II.

Kelly appeals the district court's ruling that he had waived the right to compel arbitration. We review *de novo* the district court's interpretation of the contract provision regarding arbitration and examine for clear error the factual findings that formed the basis for the court's ruling. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).

There is a liberal federal policy favoring arbitration, grounded in the Federal Arbitration Act, 9 U.S.C. § 2, which provides that contract provisions directing arbitration shall be enforceable in all but limited circumstances. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The party seeking arbitration may be found to have waived his right to it, however, if he "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998).

A party acts inconsistently with its right if it "'[s]ubstantially invoke[s] the litigation machinery' before asserting its arbitration right" by failing to request a stay and fully adjudicating its rights. Ritzel, 989 F.2d at 969 (quoting E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th Cir. 1977)). The actions must result in prejudice to the other party for waiver to have occurred. Stifel, Nicolaus & Co. v.

-4-

Freeman, 924 F.2d 157, 158-59 (8th Cir. 1991) (holding there was no prejudice and therefore no waiver, even though the moving party acted inconsistently by initiating the suit). Prejudice results when, *inter alia*, parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts. Stifel, 924 F.2d at 159.

We conclude that the district court did not err in finding that Kelly had waived his right to arbitration. Kelly, a lawyer, negotiated the terms of the SA, including the arbitration clause. He acted inconsistently with that right by litigating the merits of his self-initiated lawsuit. Kelly consistently encouraged the district court to resolve the entire dispute and failed to object or move to compel arbitration throughout a year of court proceedings. He vigorously pursued discovery and did not raise an arbitration claim until after the district court had ruled against him on all of his motions on the merits of the case. Finally, Golden was prejudiced by Kelly's delay in seeking arbitration. He incurred expense and experienced substantial delay as a result of the extensive litigation and would be required to extensively duplicate his efforts if he were now required to participate in arbitration.

III.

Kelly next contends that the district court erred in entering summary judgment on Golden's counterclaims for breach of the nondisparagement/ confidentiality clause in the contract and for prima facie tort. We review a grant of summary judgment de novo. Schaller Tel. Co. v. Golden Sky Sys. Inc., 298 F.3d 736, 742 (8th Cir. 2002). We affirm if the evidence presented by both parties, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Schaller, 298 F.3d at 742-43. We apply Missouri substantive law to the breach of contract and prima facie tort claims. Nordyne, Inc. v. Int'l Controls & Measurements Corp., 262 F.3d 843, 846 (8th Cir. 2001).

## A.

We conclude that Golden has not established that he is entitled to judgment as a matter of law for breach of the confidentiality clause of the SA. Kelly's statements are protected by the absolute privilege afforded by the Missouri courts to statements made in judicial proceedings. Henry v. Halliburton, 690 S.W.2d 775, 780 (Mo. 1985) (en banc); see also Barge v. Ransom, 30 S.W.3d 889, 890 (Mo. App. 2000). The privilege is based on the policy favoring freedom of expression and the desire not to inhibit parties from detailing and advocating their claims in court and is absolute, regardless of motive. Barge, 30 S.W.3d at 890-91.

Kelly's actions in criticizing and disparaging Golden and in threatening to destroy Golden's reputation may serve as the basis for court-initiated sanctions, but they do not constitute a breach of contract within the confines of the lawsuit. The pleadings and other written communications were all related to the litigation, and Golden has not presented evidence of any statements that were made outside the scope of the litigation. Accordingly, the grant of summary judgment on this claim must be set aside.

## B.

We also reverse the district court's grant of summary judgment on the claim of prima facie tort. Such a claim is disfavored under Missouri law, particularly when a party has another remedy or other potentially submissible tort claims available. Rice v. Hodapp, 919 S.W.2d 240, 246 (Mo. 1996) (en banc). We conclude that the Supreme Court of Missouri would not condone its use in the circumstances of this case.

Under Missouri law, prima facie tort has the following elements: (1) intentional lawful act by the defendant, (2) an intent to cause injury to the plaintiff, (3) injury to

the plaintiff, and (4) an absence of any justification or an insufficient justification for the defendant's act. Porter v. Crawford & Co., 611 S.W.2d 265, 268 (Mo. App. 1980). The tort is recognized in those cases in which it is necessary for the courts to respond to the needs of society and to provide equity when a party has no other tort remedy. Id. at 268. To establish a case for prima facie tort, a party must both allege evidence for supporting each of the four elements and satisfy a "balancing of interests" test. Killion v. Bank Midwest, N.A., 987 S.W.2d 801, 808 (Mo. App. 1998).

The Supreme Court of Missouri has noted that it is difficult to find any reported cases in which a recovery for prima facie tort has been established. Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 67 n.4 (Mo. 2000) (en banc). A party may not invoke prima facie tort to circumvent a limitation on the scope of a cause of action, to evade a defense to a recognized tort claim, or as a substitute for a submissible case that it can make under another tort. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 315 (Mo. 1993) (en banc); see also Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 6 (Mo. 1987) (en banc) (holding that an insured may not use prima facie tort to avoid the limitation on first party claims under the tort of bad faith dealings); Dake v. Tuell, 687 S.W.2d 191, 193 (Mo. 1985) (en banc) (holding that an employee may not use prima facie tort to sue for wrongful discharge and avoid the established doctrine of at-will employment); Bandag of Springfield, Inc. v. Bandag, Inc., 662 S.W.2d 546, 552 (Mo. App. 1983) (stating that if a claimant's proof allows submission under an established tort, he may not submit his claim under prima facie tort).

Golden concedes that other tort claims were available.[2] To allow him to plead prima facie tort in these circumstances would turn prima facie tort into a default tort instead of one that may be alleged only when no other remedy is possible. Nazeri, 860 S.W.2d at 315. A claim that a lawsuit was brought to accomplish an improper purpose such as harassment or coersion is maintainable in Missouri under the tort of abuse of process.[3] We do not believe that the Supreme Court of Missouri would allow a party to use prima facie tort as a substitute for a claim of an abuse of process, nor would it allow a party to use prima facie tort to circumvent the absolute privilege afforded defamatory statements made within the context of judicial proceedings. Accordingly, we reverse the grant of summary judgment on this claim.

IV.

Likewise, we reverse the award of punitive damages, for under Missouri law punitive damages are generally not available for a breach of contract in the absence of a showing that the breach amounts to an independent tort, separate from the contractual claim, accompanied by allegations of legal malice. Sands v. R.G. McKelvey Bldg. Co., 571 S.W.2d 726, 733 (Mo. App. 1978).

Although the district court properly censured Kelly for his unprofessional conduct, it did not find that an independent tort had been committed. Prima facie tort

---

[2]In arguing for punitive damages, he indicated numerous independent torts he could allege, including defamation, invasion of privacy, and malicious prosecution. App. at 1261-62.

[3]The elements of abuse of process are: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process; and (3) damage resulted." Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990) (en banc) (quoting Stafford v. Muster, 582 S.W.2d 670, 678 (Mo. 1979) (en banc)).

having not been established by the evidence, there existed no basis for an award of punitive damages, and thus we must set that award aside.

V.

Kelly appeals the award of attorney's fees. We review an award of attorney's fees for abuse of discretion. Am. Fed'n of Musicians v. St. Louis Symphony Soc., 203 F.3d 1079, 1081 (8th Cir. 2000). The district court has broad discretion to determine the appropriate amount of fees. Denesha v. Farmers Ins. Exch., 161 F.3d 491, 501 (8th Cir. 1998). It is more familiar than we with the parties' conduct during the course of the litigation and is in a better position to decide "what sanctions are appropriate for misconduct." Hutchins v. A.G. Edwards & Sons, Inc., 116 F.3d 1256, 1260 (8th Cir. 1997) (quoting Givens v. A.H. Robins Co., 751 F.2d 261, 263 (8th Cir. 1984)).

Under the longstanding American Rule, parties are required to pay their own attorney's fees unless an award of fees is authorized by statute. Am. Fed'n, 203 F.3d at 1081. There are, however, three categories of exceptions in those cases in which the opposing party's conduct amounts to abuse of the judicial process. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975); Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991). The Supreme Court elaborated on the "bad faith exception" in Chambers, stating that the district court may properly exercise its inherent power when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 501 U.S. at 45-46 (quoting Alyeska, 421 U.S. at 258-259); see also Hoover v. Armco, Inc., 915 F.2d 355, 357 (8th Cir. 1990) (upholding the use of the exception when the district court found the party had brought a frivolous claim in bad faith). This inherent power is similar to the court's other powers to impose sanctions, but it is both broader in that it may reach more litigation abuses and narrower in that it may only be for attorney's fees. Chambers, 501 U.S. at 46. The power to award fees is exercisable only with respect to conduct occurring during the

litigation, not conduct that gave rise to the cause of action. Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1435 (8th Cir. 1997).

The "bad faith exception" is not a substantive remedy, and it may be applied against either party based on its conduct during litigation, regardless of which party prevails. Chambers, 501 U.S. at 53. The power of a federal court to award fees is limited by Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), only in those cases in which state law requires an award of fees or prohibits such an award as a matter of state policy. Chambers, 501 U.S. at 51-52; Lamb Eng'g, 103 F.3d at 1434. Missouri recognizes a "special circumstances" exception to the American Rule in situations in which a party has engaged in intentional misconduct. Volk Constr. Co. v. Wilmescherr Drusch Roofing Co., 58 S.W.3d 897, 901 (Mo. App. 2001). Thus, the district court acted well within its authority in granting an award of fees in this case.

When awarding attorney's fees, the district court must make findings as required in Fed. R. Civ. P. 52(a), specifying the facts and stating its conclusions of law based on those facts. The district court concluded that Kelly's "conduct during the course of this lawsuit" constituted "special circumstances" justifying an award of attorney's fees. D. Ct. Order of Nov. 7, 2002, at 23. It specifically found that Kelly's pleadings and correspondence "were meant to intentionally harm Defendant professionally and personally." Id. The record reflects Kelly's consistent animosity towards Golden, witnessed by the court in the pleadings and during hearings. See, e.g., D. Ct. Order of Nov. 7, 2002, at 18-20. Accordingly, we conclude that the district court did not abuse its discretion in awarding fees.

## VI.

Finally, Kelly contends that the district court erred by granting a permanent injunction. We review the district court's choice to grant a permanent injunction for abuse of discretion. Forest Park II v. Hadley, 336 F.3d 724, 731 (8th Cir. 2003); U.S.

v. Green Acres Enterprises, Inc., 86 F.3d 130, 132 (8th Cir. 1996). Because injunctions are intertwined with the remedy under substantive state law, we look to Missouri law on this issue. See Lauf v. E.G. Shinner & Co., 303 U.S. 323, 327-28 (1938); 13 Moore's Federal Practice §65.08.

To obtain an injunction under Missouri law, the moving party must prove that the party has no adequate remedy at law and that irreparable harm will result if the injunction is not granted. City of Kan. City v. N.Y. - Kan. Bldg. Assoc., L.P., 96 S.W.3d 846, 855 (Mo. App. 2002). A court may find that there is not an adequate remedy at law if "damages will not adequately compensate the plaintiff for the injury or threatened injury." Glenn v. City of Grant City, 69 S.W.3d 126, 130 (Mo. App. 2002).

The district court found a breach of the covenant not to sue and also found that Kelly intended to harm and disparage Golden by means of this lawsuit. It noted that Kelly's harmful conduct towards Golden, which it characterized as "vicious, irrelevant, and personal," had been protracted and ongoing, despite the court's warnings that Kelly desist from any further conduct of that nature. It found that there was no reasonable probability that Kelly's conduct would cease in the absence of an injunction and therefore concluded that injunctive relief was necessary to protect Golden from irreparable injury. These reasons for awarding injunctive relief find ample support in the record, and we find no abuse of discretion in the entry of the injunction.

VII.

The award of attorney's fees and costs and the grant of an injunction are affirmed. The summary judgment for breach of the confidentiality provision and prima facie tort is reversed, as is the award of punitive damages.

_____