CITY OF McGREGOR, Iowa, Plaintiff,

v.

Robert A. JANETT, Virginia M. Janett, and James Janett, Defendants.

Robert A. JANETT, Virginia M. Janett, and James Janett, Appellees,

v.

CITY OF McGREGOR, Iowa, Appellant.

No. 94–2016.

Supreme Court of Iowa.

April 17, 1996.

Rehearing Denied May 23, 1996.

William C. Fuerste and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, and Michael J. Schuster of Schuster & Mick Law Office, Guttenberg, for appellant.

Dale L. Putman of Putman & Strand Law Office, Decorah, for appellees.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This is the second chapter in a controversy over the city of McGregor's condemnation of riverfront property owned by Robert and Virginia Janett. In an earlier case, the court of appeals rejected the Janetts' civil rights claims against the city engineer. *See City of McGregor v. Janett,* 480 N.W.2d 576, 580 (Iowa App.1991). In the case now before us, the question is whether the city can be held liable on a theory of fraudulent misrepresentation for statements made by city council members concerning the condemnation. Janetts convinced the district court that oral assurances made by the council led them to forego an appeal of the condemnation award in the belief the proceedings would be abandoned and their property returned. Finding the council members' statements actionable, the court entered judgment against the city for damages equal to what Janetts claimed they could have recovered had an appeal been pursued.

On appeal the city contends the record does not support the district court's ruling, factually or legally. We agree and reverse.

I. The case was tried to the court at law, thus our review is limited to the correction of legal error. Iowa R.App.P. 4. We are obliged to view the evidence in the light most favorable to sustaining the court's judgment. *Grefe v. Ross,* 231 N.W.2d 863, 865 (Iowa 1975). We are not, however, bound by the trial court's conclusions of law. *Barske v. Rockwell Int'l Corp.,* 514 N.W.2d 917, 920 (Iowa 1994).

II. In order to expand its sewage treatment facilities, the city in 1987 commenced eminent domain proceedings to secure approximately three-fourths of an acre of land owned by Janetts. *See generally* Iowa Code ch. 472 (1987).[1] The property fronted the

---

1. Statutory procedures under power of eminent domain were transferred to chapter 6B in the 1993 Code.

Mississippi River and adjoined the city's existing sewage treatment plant. From the outset the Janetts were unhappy about the proceedings. They were particularly dissatisfied when, on December 16, 1987, the compensation commission returned an award of only $29,500. Although aware of their right of appeal to the district court, *see* Iowa Code section 472.14, Janetts instead took their concerns to city hall.

At a meeting held January 5, 1988, the newly elected members of the McGregor city council discussed the sewage treatment project in open session. The scope and tenor of the discussion was hotly contested at trial. Customary tape recordings of the meetings could not be found. Written minutes of the meeting state only that one of the city's engineers, Scott Byram, "visited with the council and answered questions relative to the waste water treatment plant expansion program and also discussed a revised engineering agreement and requested council approval." It appears beyond dispute that Byram told the council the project could be built entirely on city land without using the Janett property. The council adjourned to executive session without taking formal action on the matter. Janetts left the council chambers with the impression they would get their land back plus reasonable expenses and attorney fees so long as they did not appeal and showed up for the next council meeting on January 19. Their impression was corroborated by a local insurance agent who was present at the meeting on unrelated business.

Any positive impression left by the open session is belied by the recorded transcript of the council's closed session. Although several council members seemed inclined to abandon the Janett condemnation altogether, concern was expressed about additional cost to the city if such a course were taken. Some surmised that even if the Janett property were not needed immediately, it might be prudent to obtain the land now for future expansion. Speculation abounded over Janetts' statutory right of appeal, the likely outcome, and the financial implications for the city. Legal counsel was not present to answer the council members' questions. The following excerpt from the end of the closed session summarizes their concerns and highlights their indecision:

A VOICE: The sad thing is I think everybody here would be willing to say, "Keep your land. Pay your attorney fees. We will pay our attorney fees. We will build the plant on property we have." However, I'm afraid of what they will come back and do to us if we do that.

A VOICE: I would like to talk to [our counsel] and convey to [him] that, sure, we would like to drop the proceedings, but we are worried about them coming back at us, and we had a new council, this was thrown on us. We had no control over it. We are trying to be as good guys as we can. So we would—if the two attorneys would negotiate—

A VOICE: Why don't you call him in the morning and see what he suggests.

A VOICE: I'll see what he says.

A VOICE: We have got to get it done before the 15th.

A VOICE: We might have to end up paying a portion of their attorney fees and not the whole works.

A VOICE: Everything is negotiable.

Robert Janett testified that at the coffee shop the next morning, January 6, at least one of the council members—James Arvidson—was less equivocal. The "gist" of his advice, in Janett's words, was this: "Come to the next meeting, January 19. We will have the City attorney there. We will get your land back if you do not appeal this and do not sue." Similar sentiment was reportedly expressed by the mayor to Robert's son. The Janetts were elated by these assurances, and planned to take no further action. But a friend suggested they call Arvidson one more time. So Virginia Janett called Arvidson at home on the evening of January 14. She testified that he told her "[t]hat we would get our land back if we didn't do anything. They wouldn't do anything, meaning the condemnation." At trial Arvidson denied offering such advice, either on January 6 or 14.

The deadline for filing an appeal of the condemnation award, January 15, passed without any action by Janetts. The council

took no action to abandon the condemnation. The Janetts refused to accept the city's check for $29,500, but the city did not commence legal action to remove them from the property until December 1988.

To support their claim for damages arising from having relied on the council members' representations, Janetts offered a real estate appraiser's opinion regarding the condemned property's value. Although undeveloped, the property is of sufficient size to accommodate two residential lots. Both lots would front on the river, increasing their value. Using comparable riverfront sales, the appraiser estimated that each lot could be sold for $44,000, for a total value of $88,000. The city offered no contrary proof.

Based on this record, the district court found that the Janetts "established their claim for fraudulent misrepresentation by a preponderance of clear, satisfactory and convincing evidence." Expanding on its reasoning in response to the city's motion under Iowa rule of civil procedure 179(b), the court stated, "the actions of the individual council members constitute the fraudulent misrepresentation in this case which induced the Janetts to give up their right to appeal." It entered judgment against the city for $58,500, a sum representing the difference between the property's fair market value established at trial and the original condemnation award. Apparently believing the action was comparable to a statutory appeal of a condemnation award, the court also entered judgment against the city for Janetts' attorney fees of $7227.50. This appeal by the city, and cross-appeal by Janetts for appellate attorney fees, followed.

III. The parties disagree from the outset about whether this case is governed by principles of tort law or contract. The choice is not as simple as it might seem. Although an action for fraudulent misrepresentation sounds in tort, the alleged misrepresentation here carries the familiar ring of a breach of promise. Resolution of the controversy brings both aspects of the law into play.

■ Fundamental rules guide our analysis. To prove fraudulent misrepresentation, a plaintiff must establish the following elements by a preponderance of clear, satisfac-

tory and convincing proof: (1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage. *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987). A statement of intent to perform a future act is actionable only when spoken with the existing intention not to perform. *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987). Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract would give rise to an action for fraud. *Id.* at 565–66 (citing W. Prosser, *The Law of Torts* § 109, at 730–31 (4th ed. 1971)).

Implicit in the district court's ruling is the finding that the council members deliberately conveyed a message of hope to the Janetts, all the while knowing they had no existing intention of abandoning the condemnation. Putting the finding another way, the council members deliberately misled the Janetts with respect to the status of the condemnation until the appeal deadline passed. Assuming the facts would support such an inference, the question then becomes whether statements by a council member can give rise to *corporate,* as opposed to *individual* liability for this type of misrepresentation. A closely related question is whether, if the statements are actionable, the record supports the Janetts' justifiable reliance on them.

■ Iowa Code section 670.2 makes a municipality liable for the torts of its officers and employees "acting within the scope of their employment or duties." *See City of West Branch v. Miller,* 546 N.W.2d 598, 600 (Iowa 1996); *Strong v. Town of Lansing,* 179 N.W.2d 365, 367 (Iowa 1970). Unlike the state Tort Claims Act, the municipal Tort Claims Act includes no exception for misrepresentation claims. *Compare* Iowa Code § 669.14(4) *with* § 670.4. Section 670.1(3) defines "officer" as including "but ... not limited to the members of the governing body." "Governing body," in turn, is defined as "the council of a city." *Id.* § 670.1(1). Thus Iowa's law appears consistent with the general rule that "[a] municipality may be charged with responsibility for misrepresen-

tations of its agent." 57 Am.Jur.2d *Municipal, County, School & State Tort Liability* § 180 (1988)..

Specific statutory restraints on a council member's authority, however, limit this potentially broad liability. The power of a city is vested in its city council. Iowa Code § 364.2(1). A city council exercises power "only by the passage of a motion, a resolution, an amendment, or an ordinance." *Id.* § 364.3(1). This court has long held that acts by individual members of a public body, even when concurred in by the majority, cannot bind the municipality unless officially sanctioned in accordance with the statute. *Lemke v. Mueller,* 166 N.W.2d 860, 864 (Iowa 1969); *Greusel v. O'Brien County,* 223 Iowa 747, 750, 273 N.W. 853, 854 (1937); *Emmet County v. Dally,* 216 Iowa 166, 168, 248 N.W. 366, 367 (1933); *Modern Steel Structural Co. v. Van Buren County,* 126 Iowa 606, 617, 102 N.W. 536, 539 (1905). Moreover, citizens dealing with city officers must, at their peril, understand the limits upon a city's power. *Marco Dev. Corp. v. City of Cedar Falls,* 473 N.W.2d 41, 43 (Iowa 1991); *Johnson County Sav. Bank v. City of Creston,* 212 Iowa 929, 934, 237 N.W. 507, 508 (1931). Because the validity of dealings with a municipality can be measured by reference to public documents and proceedings, the doctrine of ultra vires has enjoyed stricter application in the public, as opposed to the private, corporate realm. *See generally* 56 Am.Jur.2d *Municipal Corporations* §§ 503–04 (1988).

■ Janetts argued successfully in the district court, and reiterate on appeal, that because their cause of action sounds in tort, not contract, these limits on a council member's authority (and hence the city's liability) are irrelevant. We disagree. In order to prevail on their tort claim, Janetts were obliged to prove justifiable reliance. Yet they make no claim the city council could have put a halt to the condemnation proceedings short of voting on such a resolution at a duly called meeting. Neither can they claim under this record that they relied to their detriment on a fraudulent misrepresentation of *official* council action. As a result, we conclude they cannot prevail, as a matter of law, because their claimed reliance rests on what amounts to no more than informal, nonbinding predictions of future council action. The Janetts relied on such promises, if indeed they were made, at their peril. *Marco,* 473 N.W.2d at 43.

The Janetts' opportunity to protect their appeal rights was in no way impaired by their or the city's interest in further negotiations. Were courts to impose liability on municipalities for the speculation advanced at city council meetings, or the assurances routinely given constituents by elected representatives, the potential for litigation would be staggering and the harm to legislative processes irreparable. Council members must be free to discuss the pros and cons of disputed issues without fear their inclinations will be misinterpreted. To rule otherwise would unnecessarily chill the legislative process.

■ Because we do not believe the city of McGregor can be held liable for misrepresentation stemming from informal statements or even assurances by its council members prior to formal action, the judgment of the district court must be reversed. Our decision necessarily renders moot the Janetts' cross-appeal for appellate attorney fees.

**REVERSED ON APPEAL; CROSS-APPEAL DISMISSED AS MOOT.**