**ASBURY SQUARE, L.L.C., Plaintiff,**

v.

**AMOCO OIL COMPANY, n/k/a BP Products North America, Inc., Defendant.**

No. 4:03–CV–40199.

United States District Court, S.D. Iowa, Central Division.

Oct. 7, 2003.

Stephen R. Eckley, Duncan, Green, Brown, Langeness & Eckley PC, Des Moines, IA, James G. Sawtelle, Duncan, Green, Brown, Langeness & Eckley PC, Denver, CO, Todd J. Locher, Locher & Locher, Farley, IA, for Plaintiff.

Robert L. Fanter, Whitfield & Eddy PLC, Des Moines, IA, Mark S. Lillie, Bevin M. Brennan, Richard C. Godfrey, Kirkland & Ellis LLP, Chicago, IL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss Count II pursuant to Federal Rule of Civil Procedure 12(b)(6) (Clerk's No. 4). A hearing on this motion was held on September 23, 2003. Plaintiff was represented by James G. Sawtelle and Stephen R. Eckley, with Mr. Sawtelle presenting oral argument resisting Defendant's motion; Defendant was represented by Mark S. Lillie and Robert L. Fanter, with Mr. Lillie presenting oral argument supporting Defendant's motion. While the Court finds the Defendant's argument on the motion to dismiss is well taken, and the Plaintiff has failed to comply with pleading requirements of Fed.R.Civ.P. 9(b), the motion will be denied at this time, and Plaintiff's request for leave to amend Count II is hereby granted.

### PROCEDURAL HISTORY

The Plaintiff, Asbury Square, L.L.C. ("Asbury Square"), commenced this action against the Defendant, Amoco Oil Company, n/k/a BP Products North America, Inc. ("Amoco") in the United States District Court for the Southern District of Iowa, Central Division, on April 11, 2003. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

The lawsuit contains two claims, breach of contract and fraud, arising out of Amoco's alleged failure to fulfill contractual duties in cleaning up hydrocarbon contamination. On June 13, 2003, Amoco filed a motion to dismiss that seeks to eliminate one of the two claims asserted by Asbury Square in its Complaint. This claim, Count II of the Com-

plaint, alleges fraud by Amoco.[1] Amoco asserts that Asbury Square has failed to plead fraud with particularity and that this claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND FACTS

Asbury Square is an Iowa limited liability company with its principal place of business in Dubuque, Iowa. Amoco Oil Company, now known as BP Products North America, Inc., is a Maryland corporation, licensed to do business in Iowa, with its principal place of business in Chicago, Illinois.

At the center of this controversy is a shopping mall located in Dubuque, Iowa, that was owned by E.T. Holdings, Inc. ("E.T.Holdings"). This mall, known as Asbury Square Shopping Center, along with the property it sits on (collectively, the "Asbury property"), is currently owned by Asbury Square, the successor in interest to E.T. Holdings. Asbury Square is also the assignee of all rights and claims possessed by E.T. Holdings in relation to Amoco. Located adjacent to the Asbury property at all times material hereto was a gasoline service station owned and operated by Amoco (the "Amoco Station").

Petroleum products were released from the underground storage tank system of the Amoco Station into the surrounding environment. The released petroleum products, also referred to as hydrocarbon contamination, migrated from the Amoco Station property onto the Asbury property. This caused the soil underlying the parking lot and shopping center building to become contaminated.

Amoco and E.T. Holdings became involved in litigation in 1995 over the hydrocarbon contamination on the Asbury property.

During the course of this litigation, Amoco extended certain indemnification to E.T. Holdings, its successors and assigns, in a letter dated May 23, 1998 (the "1998 Letter"). The relevant portion of that letter states that Amoco will "pay the full cost of any and all necessary investigation, assessment, remediation, and clean-up of hydrocarbon contamination emanating from the former Amoco Oil Company site." Asbury Square maintains this is a valid and binding contract. Asbury Square further alleges that Amoco had no intention of performing the promises it made in the 1998 Letter, the remediation system being used by Amoco was insufficient to clean up the property, and Amoco has made no attempt to remedy the deficiencies in its system. The promises in the 1998 Letter were made to E.T. Holdings during the trial stage of the litigation, and the 1998 Letter itself was subsequently incorporated into a settlement agreement resolving the parties' prior litigation.

At trial, the jury found for E.T. Holdings and awarded $16.7–million in compensatory damages. This amount was later reduced by $13–million in an order of remittitur by the court. Amoco used the 1998 Letter at trial[2] as well as in proceedings before the court following the jury verdict.[3] The parties ultimately settled while an appeal and cross-appeal were pending before the Eighth Circuit. The settlement required Amoco to pay $3.75–million[4] and provided in exchange that

---

**1.** On June 30, 2003, Asbury Square sought leave to amend the fraud count in its Complaint by filing an application for leave to amend. Asbury Square argued that leave of the Court is not necessary under the Federal Rules of Civil Procedure and that it should be able to amend as a matter of course. Out of an "abundance of caution", Asbury Square requested leave to amend if the Court finds it cannot amend as a matter of course. As per the local rules, an Amended Complaint was attached to Plaintiff's application for leave to amend. The Court finds Asbury Square has a right to amend as a matter of course under Federal Rule of Civil Procedure 15(a) and does not need to seek leave of the Court to amend its original Complaint. Amoco did not resist this finding at oral hearing; therefore, the Court will analyze Defendant's motion

to dismiss as applicable to Count II of the Amended Complaint.

**2.** In the course of the jury trial, Amoco urged the jury that the 1998 Letter was "just like an insurance policy ... better than an insurance policy, very easy to read ... and it's absolutely free."

**3.** Amoco used the 1998 Letter in furtherance of its attempt to persuade the court to set aside or reduce the amount of the jury verdict. The letter was to show Amoco had accepted full responsibility for past and future cleanup costs.

**4.** There is no contention that Amoco has not faithfully fulfilled this portion of the settlement agreement.

E.T. Holdings would release any and all claims against Amoco with the exception of any claims it may have from the 1998 Letter. This letter was attached to the parties' Confidential Settlement Agreement. Asbury Square argues the use of the 1998 Letter is evidence that Amoco had an ulterior motive in making the promises contained in the letter and that such promises were made in bad faith and lacking an existing intent to perform.

Following the trial and settlement, Amoco ceased all remediation and clean-up efforts for an unspecified amount of time. Amoco halted operations in conjunction with efforts to persuade the IDNR to loosen its requirements regarding Amoco's mandatory remediation activities.

According to Asbury Square, nearly five years after the settlement there still remains substantial hydrocarbon contamination on the Asbury property. Asbury Square claims this is a result of Amoco's failure to fulfill its obligations—obligations that Amoco never had any intention of completing.

In or around 2002, Asbury Square retained an environmental engineering firm to review the performance of Amoco's remediation system. The engineering firm found the remediation in place was inadequate and set forth some recommendations to properly clean up the property. Amoco was furnished with this report in August 2002 but has not done anything to remedy the noted deficiencies.

In addition, a Site Monitoring Report was submitted to the Iowa Department of Natural Resources ("IDNR") on February 14, 2003. In this report, Amoco has, through its consultants, confirmed the continued existence of contamination in the soil and groundwater underlying the shopping center property. Some of the levels of contamination have actually been increasing. As a result of the contamination still present, the Asbury property is classified by the IDNR as a "High Risk" site. This classification requires, among other things, the ongoing monitoring of indoor air quality in the shopping center building.

Asbury Square, as the assignee of all rights arising out of this contract, has made demand upon Amoco to pay for all costs necessary to investigate, assess, remediate, and clean up the hydrocarbon contamination on the property owned by Asbury Square. Asbury Square alleges that Amoco has failed to do this and has further refused to fulfill its obligation, thereby breaching the express terms of the parties' agreement. Asbury Square further claims the alleged breach of this contract has and will continue to damage Asbury Square as the hydrocarbon contamination has not been cleaned up.

Based on these and other facts,[5] Asbury Square has advanced a fraud claim in addition to the breach of contract claim in its Complaint. The fraud claim alleges Amoco "had no intention of honoring its commitment to pay the costs of cleaning up the contamination" on the Asbury property at the time it made the promises in the 1998 Letter. It further alleges Amoco made the promises in bad faith and with the motive of using the remediation and clean-up promises to influence the jury, the judge, and E.T. Holdings. Asbury Square argues the jury, judge, and E.T. Holdings did in fact rely on the 1998 Letter in arriving at an amount of damages at trial, ordering remittitur following trial, and entering into a subsequent settlement with Amoco. It is this claim that Amoco seeks to have dismissed.

## ANALYSIS

Pending before the Court is Defendant's Motion to Dismiss.[6] Amoco seeks to have

---

5. Additional, more specific facts and allegations relied on by Asbury Square as a basis for its fraud claim are located and discussed in the Analysis section below.

6. As noted *supra*, footnote 1, Plaintiff filed an application for leave to amend, asserting it is not required to do so, but requesting leave to amend if the Court finds it does not have the right to amend as a matter of course. The Court determined leave to amend was not required. Defendant's motion to dismiss seeks dismissal of the fraud claim, even as pleaded in the Amended Complaint. Amoco argues that Asbury Square's fraud claim suffers from two deficiencies ("and still suffers even with the proposed amendment"), and thus "the proposed Amended Complaint still fails to state a fraud claim."

At the oral hearing on the motion to dismiss, the parties' arguments revolved around whether

Count II of Plaintiff's Complaint dismissed. Count II of the Complaint is a claim for fraud. Amoco's contentions are that Asbury Square's fraud claim is nothing more than a breach of contract action and that it is based on nothing more than the opposing party's understanding of the contract, neither of which are actionable as fraud. Amoco seeks dismissal for failure to state a claim based on a stated failure to plead with particularity as required by the Federal Rules of Civil Procedure. Meanwhile, Asbury Square maintains it has pleaded fraud with the requisite particularity in its Amended Complaint.

**A. Standard for Motion to Dismiss.**

Rule 12(b)(6) allows the court to dismiss a cause of action for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). Motions under this rule "can serve a useful purpose in disposing of legal issues with a minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). "The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims." *DeWit v. Firstar Corp.,* 879 F.Supp. 947, 959 (N.D.Iowa 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989)). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can not prove any set of facts in support of his claim that would entitle him to relief." *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 740 (8th Cir.2002).

In considering a motion to dismiss, the court must accept as true all of the plaintiff's allegations. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992). The court must also liberally construe those allegations. *DeWit,* 879 F.Supp.

at 959 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal under Rule 12(b)(6) is not warranted when based solely on a judge's disbelief of the plaintiff's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "[A] court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A court should review only the pleadings in addressing a motion to dismiss to determine whether they state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6); *DeWit,* 879 F.Supp. at 959–60. Using these articulated standards, the Court now considers the contentions made in Defendant's Motion to Dismiss Count II.

**B. Defendant's Motion to Dismiss Count II—Fraud.**

Generally, Asbury Square claims Amoco had no intention of performing its obligation at the time it made the promises in the 1998 Letter. Asbury Square provides several allegations in support of this in its Amended Complaint. Asbury Square also avers that Amoco had an ulterior motive in making the promises in the 1998 Letter, the alleged proof being that Amoco used the indemnification letter, first, in an effort to sway the jury to award a lower amount of damages, second, to convince the judge to order a remittitur of the jury awarded damages, and third, to encourage Asbury Square to enter into a settlement agreement.

Amoco has moved to dismiss this count for failure to plead fraud with particularity. *See* Fed.R.Civ.P. 9(b). Amoco contends Asbury Square has not pleaded with the required particularity in its Amended Complaint but has instead merely alleged broken promises. Amoco also asserts the fraud claim should be dismissed because, at its essence, it is merely

the Amended Complaint pleaded fraud with sufficient particularity so as to withstand a motion to dismiss.

based on Asbury Square's understanding of a contract clause. Amoco argues the allegations made by Asbury Square are insufficient to withstand a motion to dismiss.

### 1. Pleading Fraud Under Rule 9(b).

 While recognizing that Rule 9(b) should be harmonized with Rule 8 of the Federal Rules of Civil Procedure, *see Schaller Tel. Co.,* 298 F.3d at 746 (citing *Abels v. Farmers Commodities Corp.,* 259 F.3d 910, 920 (8th Cir.2001)), Rule 9(b) does impose additional obligations on a party bringing a claim for fraud.[7] *DeWit,* 879 F.Supp. at 989 (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547 (9th Cir.1994)); *see also Schaller Tel. Co.,* 298 F.3d at 746 (providing a higher degree of notice required in pleading fraud). According to Rule 9(b), a claim for fraud must aver with particularity the circumstances purportedly constituting the fraud. *Brown v. North Central F.S. Inc.,* 987 F.Supp. 1150, 1155 (N.D.Iowa 1997). "Under the rule, allegations of fraud in a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* These have been described as "time, place, and content" requirements. *Id.* (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1547).

Therefore, when pleading fraud, the plaintiff must aver the circumstances constituting fraud with particularity. *Commercial Prop. Inv., Inc. v. Quality Inns Int'l,* 61 F.3d 639, 644 (8th Cir.1995). The Eighth Circuit has found "circumstances" to include matters such as " 'the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given there-

by.' " *Id.* (quoting *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* Scienter, however, may be pleaded in conclusory fashion with the caveat that the party pleading fraud "must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." *Lucia v. Prospect Street High Income Portfolio, Inc.,* 36 F.3d 170, 174 (1st Cir. 1994). *See also Brown,* 987 F.Supp. at 1156 (finding that even though under Rule 9(b) certain conditions of the mind such as malice, intent, and knowledge may be averred generally, there is still a heightened requirement to allege facts making it reasonable to believe defendants knew that their statements were false or misleading at the time they were made).

 "Proving fraud under Iowa [law] is no simple matter." *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank,* 221 F.Supp.2d 1000, 1007 (S.D.Iowa 2002). To show fraud in Iowa,[8] a plaintiff needs to establish the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage." *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987); *see also Schaller Tel. Co.,* 298 F.3d at 745–46 (citing *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 400 (Iowa 2001)). In Iowa, a person's statement of intent to perform a future act is actionable *only if* that person had an intent not to perform *at the time* the statement was made. *Robinson,* 412 N.W.2d at 565; *see also Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1393 (8th Cir.

**7.** The Plaintiff argues that the decision in *Schaller Telephone Co. v. Golden Sky Systems, Inc.,* 298 F.3d 736, 740 (8th Cir.2002), restricts the applicability of *Brown v. North Central F.S. Inc.,* 987 F.Supp. 1150, 1155 (N.D.Iowa 1997). The Court cannot find that *Schaller Tel. Co.* materially altered the Rule 9(b) pleading requirements enunciated in *Brown. See e.g., Siouxland Energy & Livestock Coop. v. Gaylor,* 2002 WL 31749490, *3–4 (N.D.Iowa) (in a case that was decided after both *Schaller Tel. Co.* and *Brown,* the court notes the language in *Schaller Tel. Co.* that Rule 9(b)

needs to be harmonized with Rule 8 but finds the standards articulated in *Brown* are still applicable).

**8.** "A federal court, sitting in diversity, applies the relevant state's substantive law governing the burden of proving fraud at trial." *Northwest Bank & Trust Co.,* 221 F.Supp.2d at 1007 (citing *Roberts v. Francis,* 128 F.3d 647, 650 (8th Cir. 1997)).

1997); *Int'l Travel Arrangers v. NWA, Inc.,* 991 F.2d 1389, 1402 (8th Cir.1993).

■ A mere broken promise is not actionable as long as the promise is made in good faith and with the expectation of carrying out that promise. *Magnusson Agency v. Public Entity Nat'l Co.-Midwest,* 560 N.W.2d 20, 28–29 (Iowa 1997); *Robinson,* 412 N.W.2d at 565; *Irons v. Cmty. State Bank,* 461 N.W.2d 849, 854 (Iowa Ct.App.1990); *see also Siouxland Energy & Livestock Coop.,* 2002 WL 31749490 at *6. "Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract would give rise to an action for fraud." *McGregor v. Janett,* 546 N.W.2d 616, 619 (Iowa 1996). "Similarly, '[a] contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of the contract.'" *Siouxland Energy & Livestock Coop.,* 2002 WL 31749490 at *7 (quoting *Northwest Airlines, Inc.,* 111 F.3d at 1393). Prosser expounds on this in his treatise on the law of torts stating:

> Unless the present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or his repudiation of the promise soon after it is made, with no intervening change in the situation, or his failure even to attempt any performance, or his continued assurances after it is clear that he will not do so.

W. Prosser, *The Law of Torts* § 109, at 730–31 (4th ed.1971).

■ Iowa law does allow for a fraud action when a party does not intend to perform a commitment at the time the promise is made. *See McGregor,* 546 N.W.2d at 619 ("statement of intent to perform a future act is actionable only when spoken with the existing intention not to perform"). In order to state a claim for fraud under this exception, a party must *"plead facts* from which it could reasonably be inferred that the promisor had no such intention to perform at the time the promisor made [the] allegedly false representations." *Brown,* 987 F.Supp. at 1157–58.

The court in *Brown v. North Central F.S., Inc.* found that evidence from which a court could infer an intention not to perform would include:

> facts from which it could be inferred that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was inconsistent with its commitments, ... or that the defendant was insolvent, knew it could not perform the promises, repudiated the promises soon after they were made, with no intervening change in the situation, failed even to attempt any performance, or continued to offer assurances after it was clear that it would not perform as promised.

*Id.* at 1159 (citing *Int'l Travel Arrangers,* 991 F.2d at 1403; *Robinson,* 412 N.W.2d at 566). Mere conclusory statements are insufficient; the party pleading fraud must present "affirmative evidence" by pleading specific facts from which an inference can be drawn that there was no existing intent to perform at the time the promise was made. *See id.* at 1157–58 (citing *Int'l Travel Arrangers,* 991 F.2d at 1403). Thus, without some showing of an intent not to perform at the time a promise is made, a pleading of fraud necessarily fails under Rule 9(b) for not meeting the particularity requirement.

■ Asbury Square has submitted an Amended Complaint repeating the allegation in its original Complaint that Amoco had no intention at any time of honoring its commitment to pay the costs of cleaning up the contamination. In Paragraph 18 of its Amended Complaint, Asbury Square expounded on this statement by offering as evidence the following allegations:

> a) Despite having all necessary resources at its disposal to clean up the property, Amoco waited until the middle of a civil jury trial, several years after the environmental contamination was first discovered on the property and nearly three years

after E.T. Holdings was forced to initiate suit, before representing that it would do so;

b) Despite Amoco's knowledge at the time the representation was made that its existing remediation system was insufficient to clean up the property, and indeed was not designed to do so, at no time following its representation did Amoco undertake any efforts to substantially alter the technology being used in connection with the existing system, notwithstanding the fact that it possessed the resources and ability to do so;

c) Despite Amoco's assurances to E.T. Holdings and the Court at the time of its representation that its commitment to pay the full cost of any and all remediation activities necessary to clean up the property was without regard to whether such activities exceeded that which was required to achieve minimum regulatory compliance mandated by the Iowa Department of Natural Resources, following the representation that Amoco undertook little or no efforts to effect a clean up of the property beyond simply meeting the minimum regulatory requirements and, in fact, attempted unsuccessfully to persuade the Iowa Department of Natural Resources to loosen its requirements regarding Amoco's mandatory remediation activities;

d) Despite Amoco's knowledge that E.T. Holdings, the Court and the jury were informed that it had agreed to pay the full cost of any and all remediation activities necessary to clean up the property, following the trial Amoco ceased operation of its inadequate remediation system for a period of time, in connection with its unsuccessful attempt at persuading the Iowa Department of Natural Resources to loosen it's [sic] requirements regarding Amoco's mandatory remediation activities;

e) Despite having been furnished in August 2002 with the report of an environmental engineering firm retained by Asbury Square to review the performance of Amoco's remediation system, which report again confirmed that Amoco's system was not adequate to clean up the property and further set forth accepted remediation measures that would result in clean up of the property, Amoco declined to undertake such measures and further claimed that it had never assumed any obligation to pay for the same;

f) Despite being informed by its own environmental engineers in February 2003 that the levels of contamination underneath the shopping mall were actually increasing (a fact which was again brought to Amoco's attention following the confirmation by an independent environmental engineering firm retained by Asbury Square), Amoco undertook no efforts to substantially alter the technology being used in connection with its existing system.

Asbury Square also alleges that Amoco's "conduct both during and after the trial was calculated and intended to mislead the jury, the Court, and E.T. Holdings" to reduce the amount of potential damages in the first instance, and later in seeking a remittitur of the damages awarded by the jury. Asbury Square contends these parties justifiably relied on Amoco's representations, i.e., the jury in determining the amount of damages to award, the court in ordering a remittitur of damages, and E.T. Holdings in entering into a settlement agreement with Amoco.

Plaintiff asserts these allegations are sufficient to meet Rule 9(b)'s particularity requirement. Asbury Square argues these facts are enough for the Court to infer an intent not to perform existed at the time Amoco made the promises in the 1998 Letter. Meanwhile, Amoco maintains these pleadings are not evidence from which an intent not to perform at the time the promise was made can be inferred by the Court. Amoco calls these added pleadings "a litany of conclusory allegations" that still fail to meet the burden for pleading fraud. Asbury Square counters this argument by asserting the Court can and should look at conduct after the promises were made to infer intent and that the pleaded allegations are sufficiently specific.

The Court must determine whether, taking all of Asbury Square's allegations as a whole, a factual inference is created that Amoco had no intention of performing the promises it made in the 1998 Letter at the time those representations were made. The role of the

Court at this time is not to determine whether fraud occurred, but whether there is an inference of fraud based on factual averments. Because this is a motion to dismiss, the factual allegations made by Asbury Square will be taken as true. *See Cruz,* 405 U.S. at 322, 92 S.Ct. 1079; *Concerned Citizens of Neb.,* 970 F.2d at 425. The Court will also liberally construe those allegations. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. In addition, while the Court will consider conduct occurring after the promises were made, any inference of a lack of intent from that conduct must be reasonable. *See Brown,* 987 F.Supp. at 1157–58 (stating a party must *"plead facts* from which it could reasonably be inferred that the promisor had no such intention to perform at the time the promisor made [the] allegedly false representations"); *see also Kunkle Water & Elec. v. City of Prescott,* 347 N.W.2d 648, 654 (Iowa 1984) (" 'intent, being a state of mind . . . is usually established *by appropriate inference and presumption* from the overt acts provided.' ") (quoting *Hall v. Wright,* 261 Iowa 758, 771–72, 156 N.W.2d 661, 669 (1968)).

### a. The Totality of the Allegations.

Amoco argues that most of Asbury Square's allegations are simply trying to show fraudulent intent not to perform through the purported subsequent failure to perform. As stated above, failure to perform, standing on its own, is insufficient to show fraud. *See Magnusson Agency,* 560 N.W.2d at 28–29; *McGregor,* 546 N.W.2d at 619; *Robinson,* 412 N.W.2d at 565; *Irons,* 461 N.W.2d at 854; *see also Siouxland Energy & Livestock Coop.,* 2002 WL 31749490 at *6.

Relevant to this case, evidence from which a court could infer an intention not to perform includes facts showing "the defendant would have been unable to perform its promises[,] . . . had already undertaken action that was inconsistent with its commitments, . . . knew it could not perform the promises,

repudiated the promises soon after they were made, . . . [or] failed even to attempt any performance . . . ." *Brown,* 987 F.Supp. at 1159 (citing *Int'l Travel Arrangers,* 991 F.2d at 1403, and *Robinson,* 412 N.W.2d at 566). Asbury Square argues that its allegations tend to show that Defendant would have been unable to perform its obligation (allegations (b) and (f)), that it undertook action inconsistent with its commitments (allegations (c) and (d)), that it repudiated the promises made (allegations (d) and (e)), and that it failed to even attempt performance (allegations (a) and (d)).

In addition, Plaintiff has alleged facts in an apparent attempt to show Amoco did not make the promises in the 1998 Letter in good faith. *See Magnusson Agency,* 560 N.W.2d at 28–29 (finding that a broken promise is not actionable if made in good faith and with the intention of carrying out that promise); *see also Siouxland Energy & Livestock Coop.,* 2002 WL 31749490 at *6 (same). Asbury Square alleges that Amoco made the promises in order to affect the outcome of the litigation, either by lowering any damages the jury awarded or in later seeking remittitur of said damages. Asbury Square alleges that once the letter accomplished its purpose,[9] Amoco did not do anything further to comply with the promises it made. Instead, Amoco suspended any attempt at clean-up and remediation while it sought to lower the IDNR requirements.

Despite Asbury Square's contentions, the Court must find the Amended Complaint does not plead fraud with sufficient particularity. Even with the additional allegations made by Asbury Square, the Court cannot infer from factual averments that Amoco had no intent to perform the promises in the 1998 Letter at the time those promises were made. The Court discusses the failing of each of Asbury Square's main allegations below.

---

9. The judge did order remittitur of the jury award by $13–million. The court stated in its order granting motion for remittitur that "Amoco has now made a concerted effort and spent considerable money to clean up a problem which it could have fixed at an earlier date. The Court is convinced that Amoco is making a belated, but good faith effort, to address that problem." There is no basis upon which to determine what influence, if any, the letter had on the jury in determining what damages to award.

### b. Allegation (a).

a) Despite having all necessary resources at its disposal to clean up the property, Amoco waited until the middle of a civil jury trial, several years after the environmental contamination was first discovered on the property and nearly three years after E.T. Holdings was forced to initiate suit, before representing that it would do so;

This allegation could infer that Defendant was using the promises it made to influence the existing litigation rather than with the actual intent of fulfilling those promises. In fact, Plaintiff makes additional allegations that tend to support this inference. Those allegations include statements made by the Defendant to the jury during the trial and in court filings seeking remittitur in post-trial motions made in the prior litigation. Asbury Square also alleges the promises made in the letter were used to spur it into entering into a settlement agreement rather than continuing to proceed with the litigation at the appellate level.

Asbury Square is unable, however, to provide the Court with a reason why this inference is illustrated by the factual claims. In fact, Asbury Square concedes that Amoco could have had an intent to perform *and* used the letter at trial, in post-trial motions, and in settlement negotiations. The Court cannot reasonably find an inference of improper motive and bad faith on the part of Amoco simply because it did in fact use the letter. Thus, on its own, the questionable timing of the 1998 Letter is insufficient to infer that Amoco had an improper motive in making the promises in the 1998 Letter or that it lacked an intent to perform at the time it made those promises.

### c. Allegation (b).

b) Despite Amoco's knowledge at the time the representation was made that its existing remediation system was insufficient to clean up the property, and indeed was not designed to do so, at no time following its representation did Amoco undertake any efforts to substantially alter the technology being used in connection with the existing system, notwithstanding the fact that it possessed the resources and ability to do so;

This allegation could be taken as evidence that Amoco was unable to fulfill its promise at the time it was made. *See Int'l Travel Arrangers,* 991 F.2d at 1403 (outlining allegations that could show no intent to perform at time promise was made). If Amoco's remediation system was insufficient to fulfill its promise, this could show it did not intend to fulfill the promise to remediate and clean up the hydrocarbon contamination. Further, by alleging Amoco did not undertake any efforts to improve the remediation system, Asbury Square presents further evidence that Amoco did not have the present ability to comply with its promise at the time it was made *and* it did not attempt to remedy this in order to comply with the promises it made.

The parties admitted, however, that the 1998 Letter did not specify how the remediation and clean-up was to occur. Amoco could have used its own system to effectuate the remediation and clean-up *or* it could have hired another company to do this. Thus, the fact that Amoco's existing remediation system was insufficient, and even accepting that Amoco had knowledge of this, would not necessarily prevent Amoco from performing the contract, either by improving its system or by hiring someone else to do the remediation and clean-up. This allegation does not put the Defendant on notice of evidence of fraud.

### d. Allegation (c).

c) Despite Amoco's assurances to E.T. Holdings and the Court at the time of its representation that its commitment to pay the full cost of any and all remediation activities necessary to clean up the property was without regard to whether such activities exceeded that which was required to achieve minimum regulatory compliance mandated by the Iowa Department of Natural Resources, following the representation that Amoco undertook little or no efforts to effect a clean up of the property beyond simply meeting the minimum regulatory requirements and, in fact, attempted unsuccessfully to persuade the Iowa Department of Natural Resources to

loosen its requirements regarding Amoco's mandatory remediation activities;

This allegation does not seem to allege anything more than a disagreement as to what was required by the parties' agreement. Instead, Asbury Square admits Amoco undertook some efforts to clean up the property, albeit arguably no more than to simply meet minimum regulatory requirements. Any inference from this allegation that Amoco was using the agreement as nothing more than a prophylactic to prevent a high jury award and that the agreement was not made with any actual intent to comply would be a stretch the Court finds inadequate to provide the required notice pleading for a fraud claim.

### e. Factual Allegation (d).

d) Despite Amoco's knowledge that E.T. Holdings, the Court and the jury were informed that it had agreed to pay the full cost of any and all remediation activities necessary to clean up the property, following the trial Amoco ceased operation of its inadequate remediation system for a period of time, in connection with its unsuccessful attempt at persuading the Iowa Department of Natural Resources to loosen it's [sic] requirements regarding Amoco's mandatory remediation activities;

This allegation states that Amoco stopped any remediation efforts immediately following the trial. This could create an inference of action that was inconsistent with Amoco's commitments, that Amoco was repudiating its promises soon after they were made, or that it failed to even attempt performance with no intervening change in the situation. *See Brown,* 987 F.Supp. at 1159 (delineating allegations that could show no intent to perform at time promise was made). The fact that Amoco was petitioning the IDNR to lower its mandatory remediation requirements for the Asbury Square property could also imply no intent to perform the obligations as made, but could be seen as an attempt to avoid the obligations it made to Asbury Square, which obligations Asbury Square maintains were greater than the minimum standards set by the IDNR.

Once again, Asbury Square has not provided factual allegations that infer more than a claim for breach of contract. Amoco was not required to use its own remediation system. In addition, the clean-up was being done under the auspices of the IDNR. Thus, it is reasonable that Amoco would have dealings with the IDNR relating to the adequacy of the clean-up. These dealings do not create a factual inference of Amoco's intent at the time it promised to pay the costs of remediation and clean-up.

### f. Factual Allegation (e).

e) Despite having been furnished in August 2002 with the report of an environmental engineering firm retained by Asbury Square to review the performance of Amoco's remediation system, which report again confirmed that Amoco's system was not adequate to clean up the property and further set forth accepted remediation measures that would result in clean up of the property, Amoco declined to undertake such measures and further claimed that it had never assumed any obligation to pay for the same;

Here again, the allegation goes more to the alleged breach of the contract rather than particularly alleging that Amoco had no existing intention of performing the promises it made. A report issued in 2002 and provided to Amoco, without more, provides little factual notice of evidence that Amoco did not intend to fulfill its promises at the time they were made in 1998. Nevertheless, Asbury Square asserts that Amoco, in declining to undertake remediation and clean up measures, "claimed that it had *never* assumed any obligation to pay for the same." This statement could be taken as an admission by Amoco that it lacked the requisite intent to perform when making the promises at issue here. However, this statement hinges upon the understanding of the parties as to the obligations incurred, and a misunderstanding cannot form the basis of a claim for fraud. *See Brown v. North Central F.S., Inc.,* 173 F.R.D. 658, 669 (N.D.Iowa 1997) (*"Brown II"*).[10] Furthermore, Plaintiff makes this

---

**10.** *See* discussion Part B.2 *infra.* While the

Court may ultimately decide that Asbury

claim but does not refer to a specific statement of repudiation by Amoco.

### g. Factual Allegation (f).

f) Despite being informed by its own environmental engineers in February 2003 that the levels of contamination underneath the shopping mall were actually increasing (a fact which was again brought to Amoco's attention following the confirmation by an independent environmental engineering firm retained by Asbury Square), Amoco undertook no efforts to substantially alter the technology being used in connection with its existing system.

Again, this allegation offers little to the possible inference that Amoco did not intend to fulfill its obligations when it wrote the 1998 Letter. "The fact the agreement was not performed does not alone prove the promissor did not intend keeping it when it was made . . . ." *Lamasters v. Springer*, 251 Iowa 69, 74, 99 N.W.2d 300, 303 (1959).

Based on the foregoing, and liberally construing and taking the totality of the allegations as true, Asbury Square has not pleaded sufficient *factual* allegations for the Court to discern an inference that Amoco did not have an intent to perform its promises at the time it made them. Asbury Square's allegations are conclusory in that they do not point to specific facts but rather merely allege Amoco had no intent to perform as proven by subsequent conduct. These allegations are insufficient in that they do not comply with Rule 9(b)'s "time, place, and content" requirements. In so finding, the Court finds Asbury Square has not met the heightened pleading requirements for fraud claims under Rule 9(b).

### 2. Understanding of Contract Clause as Basis for Fraud Claim.

Amoco also asserts that Asbury Square's fraud claim, at its essence, reduces to noth-

ing more than a dispute about the meaning of a clause in the 1998 Letter. A misinterpretation of an unambiguous contract clause cannot form the basis of a fraud claim. *See Brown II*, 173 F.R.D. at 669 (finding "that pleading what a plaintiff 'understood' is insufficient" to meet the particularity requirements of Rule 9(b)).

However, Asbury Square is not alleging fraud based on its understanding of the parties' agreement. Asbury Square has attempted to allege that Amoco had no intention of fulfilling its obligations. Further, Asbury Square asserts Amoco had an ulterior motive in making the promises in the 1998 Letter. Thus, Asbury Square may have a viable claim on the basis of fraud if that claim is alleged with greater particularity.

### C. Further Amendment of the Fraud Claim.

In oral argument, Asbury Square requested leave to amend to add allegations in order to meet the particularity requirement if the Court finds its Amended Complaint does not meet the standard of Rule 9(b). Amoco resists the requested leave to amend claiming that any further amendment to the Amended Complaint would still fail to meet Rule 9(b)'s requirements and is therefore futile and should not be allowed. Because Asbury Square's Amended Complaint has been found deficient, the Court must determine whether another opportunity to amend is appropriate.[11]

■ The purpose of the heightened pleading standard encompassed in Rule 9(b) is to provide the defendant with notice sufficient for the defendant to provide an adequate answer. *DeWit*, 879 F.Supp. at 989. Based on this, courts have been reluctant to dismiss completely a claim of fraud for failure to plead with particularity as required by Rule

Square's fraud claim is not based on a misunderstanding or misinterpretation of a contract clause, if this statement boils down to the respective understanding of the parties, then it cannot be used to infer Amoco had no intent to perform its promises at the time it made them.

11. The Court notes this would be Asbury Square's third opportunity to plead fraud with the requisite particularity. The first opportunity was the original Complaint, which Asbury Square subsequently amended as a matter of course with its Amended Complaint, the Amended Complaint being Asbury Square's second chance at meeting Rule 9(b)'s requirements.

9(b). Instead, courts have allowed the plaintiffs a second (and sometimes third and fourth) chance to file a pleading that conforms with the requirements of Rule 9(b).[12] *See, e.g., Brown,* 987 F.Supp. at 1159 (discussing the decision in *Brown II,* 173 F.R.D. at 665–72, to allow the plaintiffs a third attempt at meeting the requirements for pleading fraud and refusing a fourth opportunity to replead when the pleadings still failed to meet the requirements of Rule 9(b)); *Siouxland Energy & Livestock Coop.,* 2002 WL 31749490 at *7 (recognizing that plaintiff had already had three opportunities to amend its original complaint to comply with Rule 9(b) and still granting the plaintiff one additional (and final) opportunity to amend). This opportunity to amend is not, however, automatically granted to a party before the court dismisses outright the deficient fraud claims. *Brown,* 987 F.Supp. at 1159.

In this case, Plaintiff did request leave to amend during oral argument. Asbury Square has further requested in its Combined Reply to Resistance to Application for Leave to Amend and Resistance to Motion to Dismiss that it be permitted "to recast [its] complaint so as to correct any deficiencies identified by the court." The Court needs to determine whether Asbury Square could sufficiently plead fraud under the standards set out above, or whether any future attempt would be futile. If any further attempt would be futile, denial of any further leave to amend and dismissal of the fraud claim would be appropriate. *See Wiles v. Capitol Indemnity Corp.,* 280 F.3d 868, 871 (8th Cir.2002).

### 1. Defendant's Futility Argument.

Federal Rule of Civil Procedure 15(a) grants discretion to the court to grant or deny a motion by a party to amend that party's pleading when the parties can no longer amend as a matter of course. *See* Fed.R.Civ.P. 15(a) ("Otherwise, a party may only amend the party's pleading by leave of court or by written consent of the adverse party"). Such discretion is tempered by the language of the Rule, which states "leave shall be freely given when justice so requires." *Id.* Amoco advances the argument that leave should not be given in the instant case because the proposed amendments would be futile and would not save Plaintiff's claim. In other words, the argument is that the interests of justice weigh against granting leave to amend.

The Eighth Circuit has held that "'futility constitutes a valid reason for denial of a motion to amend.'" *K–tel Int'l, Inc. Sec. Litig.,* 300 F.3d 881, 899 (8th Cir.2002) (quoting *Knapp v. Hanson,* 183 F.3d 786, 790 (8th Cir.1999)); *see also Wiles,* 280 F.3d at 871 ("Leave to amend should be denied if the proposed amended pleading would be futile."). "Although leave to amend a complaint 'should be freely granted,' it may be denied if the proposed amended pleading would be futile." *Ingrim v. State Farm Fire & Cas. Co.,* 249 F.3d 743, 745 (8th Cir.2001). Thus, a court may deny a motion for leave to amend for futility if the proposed amendments would not save the party's claim from dismissal. *See Mississippi River Revival, Inc. v. City of Minneapolis,* 319 F.3d 1013, 1018 (8th Cir.2003) (finding court did not abuse discretion in denying motion to amend where "the proposed amended claims as pleaded would be futile"); *K–tel Int'l, Inc. Sec. Litig.,* 300 F.3d at 899 (finding no abuse of discretion where court found it futile to amend because no actual amendments were possible "to plead facts with sufficient particularity to raise a strong inference of scienter"); *Wiles,* 280 F.3d at 871 (finding court did not abuse discretion in denying leave to amend because the proposed amendment merely restated a prior claim that would fail as a matter of law for the same reasons it failed in the original complaint); *Ingrim,* 249 F.3d at 745–46 (upholding district court's decision to deny motion to amend based on futility as new claims asserted in proposed amendment would also be time-barred).

Thus, courts have refused to permit a party to amend its pleadings where the proposed amendment would not cure the defect that the party sought to correct. Asbury Square

---

12. Further attention to amendment of pleadings at this early stage also has the potential of avoiding a reconsideration of the issue after discovery has been conducted and the Plaintiff then seeks amendment of the Complaint to allege fraud with particularity.

did state that "it is difficult to imagine more specific factual assertions to support its allegations that Amoco never had any intention of fulfilling its promise to clean up the property at the time these representations were made, or at any time." Defendant uses this statement to argue that Asbury Square concedes it cannot make any further amendments to cure the deficiencies if the Court finds its Amended Complaint fails to plead fraud with particularity. Amoco cites *K–tel International, Inc. Securities Litigation* for the proposition that no further amendments are possible where the plaintiff "admitted it could not plead certain claims with any greater precision." *K–tel Int'l, Inc. Sec. Litig.*, 300 F.3d at 899.

■ The Court does not agree with Defendant's assertion that this is what Asbury Square meant with this statement. Given further motivation, Asbury Square may very well be able to provide more specific factual assertions to support its allegations. In fact, Plaintiff does request that it be permitted "to recast [its] complaint so as to correct any deficiencies identified by the court" and claimed in oral argument that it can plead facts that will meet the requirements of Rule 9(b). Specific correspondence was addressed during oral argument that might provide the basis for factual averments regarding time, place and content as well as an inference of intent.

The Court recognizes that courts are reluctant to dismiss with prejudice a fraud claim for failure to meet Rule 9(b)'s requirements, *see Brown II*, 173 F.R.D. at 665–72, and *Siouxland Energy & Livestock Coop.*, 2002 WL 31749490 at *7, and that Rule 15(a) requires leave to amend be freely given when justice so requires. Therefore, this Court will only deny Asbury Square an additional attempt to amend its complaint and plead fraud with the requisite particularity if it is readily apparent any future amendment would be futile.

The Court is unable to find any future amendment will be futile in meeting the Rule 9(b) particularity requirement in pleading fraud. Asbury Square indicated in oral argument that it can provide additional facts from trial records, letters, and other correspon-

dence between the parties that could provide an inference that an intent not to perform existed at the time the promises were made by Amoco. The Court finds Asbury Square should have the opportunity to plead those facts. The Court notes, however, that it is not looking for a mammoth pleading detailing everything that Amoco has said and done. Asbury Square can plead allegations in a summary fashion but needs to aver *specific facts* involving time, place, content, persons involved, and actions taken or omitted, from which the inference may arise that Amoco lacked the requisite intent to perform at the time of making the representations. Acceptable evidence that could potentially lead to such an inference is outlined in the *Brown* decision and provides a guideline as to the types of facts Asbury Square needs to include in amending its fraud claim. *See Brown*, 987 F.Supp. at 1159.

## CONCLUSION

Plaintiff's Amended Complaint does not meet the requirements set out in Rule 9(b). The Court finds the interests of justice and wise case management support allowing the Plaintiff to have another attempt to plead fraud with the requisite particularity, and the Court grants Plaintiff's request to further amend the Complaint. Consequently, Defendant's Motion to Dismiss Count II is denied at this time but may be reconsidered if the Plaintiff's amendment fails to cure the defects under Rule 9(b).

Amoco's Motion to Dismiss (Clerk's No. 4) is **denied,** and Asbury Square's request made at oral argument for leave to amend is **granted.**

**IT IS SO ORDERED.**