(December 22, 1998)

■ MASSACHUSETTS BAY INSURANCE COMPANY, Respondent-Appellant, v THOBURN M. STAMM, JR., Individually and as Conservator of MARILYN N. STAMM, Appellant-Respondent and Third-Party Plaintiff-Appellant-Respondent. HANOVER INSURANCE COMPANY, Third-Party Defendant-Respondent-Appellant. [683 NYS2d 20] —Order, Supreme Court, New York County (Herman Cahn, J.), entered June 27, 1997, *inter alia*, granting plaintiff's motion for summary judgment to the extent of dismissing, without prejudice, defendants' fraud claims and counterclaims and striking defendants' claims for attorneys' fees and punitive damages, granting plaintiff's motion to dismiss the defendants' fifth and sixth affirmative defenses, but denying plaintiff's motion to dismiss defendants' fourth affirmative defense, unanimously modified, on the law, to grant the motion for summary judgment dismissing defendants' fraud claims, on the merits, and dismissing defendants' fourth affirmative defense, and otherwise affirmed, without costs.

Defendant and third-party plaintiff/conservator Thoburn Stamm drove the vehicle in which his wife, conservatee Marilyn Stamm, was seriously injured in a 1985 Michigan car accident involving another vehicle, after which she lapsed into a five week coma; she remains disabled. Plaintiff Massachusetts Bay Insurance Company, which had provided automobile insurance to the Stamms, and third-party defendant Hanover Insurance Company, which had provided personal catastrophe coverage, provided a defense on counterclaims against Thoburn Stamm in the personal injury action that the Stamms had commenced in 1986 in Bronx Supreme Court (Bertram Katz, J.) against the owner of the other vehicle and the manufacturer of their own vehicle. That action settled for approximately

$6,500,000 and was discontinued by defendants in 1991. All parties were represented by counsel. Mr. Stamm had retained personal counsel to represent him for liability in excess of coverage and Mrs. Stamm's interests were represented by an appointed guardian ad litem. As part of the settlement and pursuant to the resettled order, the carriers agreed, *inter alia,* to "continue" to pay reasonable medical charges for reasonable medical services under Michigan's no-fault law and to waive any lien relating to recovery from the car manufacturer. Defendants note that the carriers paid 100% of all medical costs, including 24-hour nursing care, from 1987 until 1993, but contend, though, that even prior to the 1991 settlement the carriers secretly had maneuvered to eventually discontinue full payments, seeking, instead, less costly care alternatives.

In 1993, Massachusetts Bay commenced this action seeking a reduction of its obligation. It now seeks a declaration that it is not obliged to continue paying certain of Mrs. Stamm's medical costs, including the cost of 24-hour nursing care when, it contends, the level of care commensurate with her convalescence can be provided by a home health care aide for part of the day, and, as such, around-the-clock nursing care is no longer reasonable and necessary. Defendants seek a declaration that all present medical expenses, including 24-hour nursing services, are reasonable and necessary and as such are required pursuant to the settlement agreement. We previously have addressed aspects of this long-standing litigation among these parties elsewhere (228 AD2d 321; 237 AD2d 145), but here are concerned only with the viability of defendants' claims that the carriers fraudulently induced them to discontinue the Bronx personal injury action by pledging to "continue" full payment of medical expenses, while intending to subsequently reduce reimbursement to providers to less than full payment. The underlying dispute, thus, centers on how much nursing care is reasonable and necessary.

In dismissing the fraud claims, the motion court expressly did not reach the merits but, rather, concluded that Bronx Supreme Court, the forum for the personal injury actions, was the appropriate forum to decide claims arising out of the settlement. Accordingly, the motion court dismissed without prejudice to renewal in that forum. However, upon our review of the record, we find no sound basis to derive a fraud claim from an agreement, concededly honored pending only the outcome of these judicial proceedings, specifically turning on whether medical expenses were reasonable and necessary under a specific body of law. Seeking a judicial declaration concerning

reasonableness and necessity is hardly tantamount to fraud. Even to the extent that defendants read the stipulation as requiring a continuation of then-current payments, as contrasted with a continuation of payments that were determined to be reasonable and necessary, this presents, at most, an issue of contract interpretation rather than fraud (*Sforza v Health Ins. Plan*, 210 AD2d 214), regardless of the carriers' intentions when entering the agreement (*Greer Real Estate v Johansen Org.*, 182 AD2d 468; *Spellman v Columbia Manicure Mfg. Co.*, 111 AD2d 320, 323). Nor was the fraud claim pleaded with the requisite particularity (CPLR 3016 [b]; *Megaris Furs v Gimbel Bros.*, 172 AD2d 209), a circumstance that also requires dismissal. For similar reasons, defendants' affirmative defense of waiver, that the carriers' conduct of paying all medical expenses until the time of the action constituted an intentional renunciation of a known right (*Airco Alloys Div. v Niagara Mohawk Power Corp.*, 76 AD2d 68, 81), should have been dismissed. Michigan law allows the no-fault insurer paying medical expenses the right to retroactively evaluate medical necessity (*Nasser v Auto Club Ins. Assn.*, 435 Mich 33, 457 NW2d 637) so that unprotesting payment does not evince a knowing surrender of the right to challenge the basis for, or extent of, the payment obligation. To hold to the contrary would unreasonably create permanent obligations to compensate for medical care that could become unnecessary with a beneficial change in the patient's condition. Under these circumstances, involving conflicting contract interpretations for which the carriers seek a judicial determination, the high degree of moral turpitude required to support punitive damages (*see, Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603), a fortiori is lacking. Therefore, this claim was properly dismissed. Defendant has made no showing of entitlement to counsel fees. Concur—Lerner, P. J., Williams, Tom and Andrias, JJ.