**ASBURY SQUARE, L.L.C., Plaintiff,**

**v.**

**AMOCO OIL COMPANY, n/k/a BP Products North America, Inc., Defendant.**

No. 4:03–cv–40199.

United States District Court,
S.D. Iowa,
Central Division.

May 21, 2004.

Stephen R. Eckley, Belin, Lamson, McCormick, Zumback & Flynn, PC, Des Moines, IA, James G. Sawtelle, Duncan, Green, Brown, Langeness & Eckley, PC, Denver, CO, Todd J. Locher, Locher & Locher, Farley, IA, for plaintiff.

Robert L. Fanter, Whitfield & Eddy PLC, Des Moines, IA, Mark S. Lillie, Bevin M. Brennan, Richard C. Godfrey, Kirkland & Ellis LLP, Chicago, IL, for defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss Count II pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) (Clerk's No. 34). A hearing on this motion was held on May 13, 2004. Plaintiff was represented by James G. Sawtelle, Todd Locher, and Stephen R. Eckley, with Mr. Sawtelle presenting oral argument resisting Defendant's motion; Defendant was represented by Mark S. Lillie, who presented oral argument supporting Defendant's motion. The Court considers the matter fully submitted.

### PROCEDURAL HISTORY

The Plaintiff, Asbury Square, L.L.C. ("Asbury Square"), commenced this action against Defendant, Amoco Oil Company, n/k/a BP Products North America, Inc. ("Amoco"), in this Court on April 11, 2003. An Amended Complaint was filed by Plaintiff and accepted by the Court on October 7,

2003, 218 F.R.D. 183 (S.D.Iowa 2003).[1] Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

The lawsuit contains two claims, breach of contract and fraud, arising out of Amoco's alleged failure to fulfill its contractual duties in cleaning up hydrocarbon contamination from leaking equipment at an adjacent Amoco service station. On June 13, 2003, Amoco filed a motion to dismiss seeking to eliminate the fraud claim asserted by Asbury Square. In an order filed October 7, 2003 ("October 7 Order"),[2] the Court denied Defendant's motion to dismiss and granted Plaintiff's motion to amend, leaving open the possibility of reconsidering Defendant's contentions if Plaintiff failed to cure the defects in an amended complaint.[3]

Asbury Square filed another amended complaint on December 12, 2003, with a corrected and amended version ("Second Amended Complaint") filed on December 23, 2003. On January 16, 2004, Amoco filed the present motion to dismiss, asserting Asbury Square failed to cure the defects in filing its Second Amended Complaint. Amoco contends the Second Amended Complaint still does not plead fraud with the requisite particularity. Consequently, Amoco asserts that Claim II should be dismissed pursuant to Rules 9(b) and 12(b)(6).

## BACKGROUND FACTS

Asbury Square is an Iowa limited liability company with its principal place of business in Dubuque, Iowa. Amoco Oil Company, now known as BP Products North America, Inc., is a Maryland corporation, licensed to do business in Iowa, with its principal place of business in Chicago, Illinois.

The present controversy stems from a letter of guaranty provided by Amoco to Asbury Square on May 23, 1998 ("1998 Letter"), during the pendency of a jury trial concerning hydrocarbon contamination of the Asbury Square Shopping Center and its property ("Asbury property"). This letter stated in pertinent part that Amoco will "pay the full cost of any and all necessary investigation, assessment, remediation, and clean-up of the hydrocarbon contamination emanating from the former Amoco Oil Company site." The 1998 Letter was accepted as a valid and binding contract and was included as part of a settlement agreement entered into by the parties in 1999. This settlement resolved the parties' prior litigation.

According to Asbury Square, there still remains substantial hydrocarbon contamination on the Asbury property. Asbury Square claims this is a result of Amoco's failure to fulfill its obligations, obligations they allege Amoco never had any intention of completing. Asbury Square, as the assignee of all rights arising out of the 1998 Letter, has made demand upon Amoco to pay for all costs necessary to investigate, assess, remediate, and clean up the hydrocarbon contamination on the Asbury property. Asbury Square alleges that Amoco has failed to do this and has further refused to fulfill its obligation, thereby breaching the express terms of the parties' agreement. In addition, Asbury Square has advanced the fraud claim

---

1. On June 30, 2003, Asbury Square sought leave to amend the fraud count in its complaint by filing an application for leave to amend. The Court found Asbury Square had a right to amend as a matter of course under Federal Rule of Civil Procedure 15(a) and was not required to seek leave of the Court to amend its original complaint. The Court then analyzed Defendant's first motion to dismiss as to the amended complaint.

2. *Asbury Square, L.L.C. v. Amoco Oil Co.,* 218 F.R.D. 183 (S.D.Iowa 2003).

3. The Court stated the following in that order:

   While the Court finds the Defendant's argument on the motion to dismiss is well taken, and the Plaintiff has failed to comply with [the] pleading requirements of Fed.R.Civ.P. 9(b), the motion will be **denied** at this time, and Plaintiff's request for leave to amend Count II is hereby **granted.**

   October 7 Order, 218 F.R.D. at 184. The Court held in conclusion that

   Plaintiff's Amended Complaint does not meet the requirements set out in Rule 9(b). The Court finds the interests of justice and wise case management support allowing the Plaintiff to have another attempt to plead fraud with the requisite particularity, and the Court grants Plaintiff's request to further amend the Complaint. Consequently, Defendant's Motion to Dismiss Count II is denied at this time but may be reconsidered if the Plaintiff's amendment fails to cure the defects under Rule 9(b).

   October 7 Order, 218 F.R.D. at 196.

at issue in the present motion, asserting Amoco never had an intent to fulfill the commitments it made in the 1998 Letter.[4]

### ANALYSIS

Pending before the Court is Defendant's second motion to dismiss. Once again, Amoco seeks to have Count II of Plaintiff's Second Amended Complaint dismissed. Count II of the complaint is a fraud claim arising out of the intent of Amoco when it made the promises contained in the 1998 Letter.

Amoco contends that Asbury Square's fraud claim is nothing more than a breach of contract action and that it is based on nothing more than the opposing party's understanding of the contract, neither of which are actionable as fraud. Amoco seeks dismissal for failure to state a claim based on failure to plead with particularity under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Meanwhile, Asbury Square maintains it has pleaded fraud with the requisite particularity with the added allegations and factual assertions contained in its Second Amended Complaint.

### A. Standard for Motion to Dismiss

■ Rule 12(b)(6) allows the Court to dismiss a cause of action for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims." *DeWit v. Firstar Corp.*, 879 F.Supp. 947, 959 (N.D.Iowa 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989)). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can not prove any set of facts in support of his claim that would entitle him to relief."

*Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir.2002).

■ In considering a motion to dismiss, the Court must accept as true all of the plaintiff's allegations. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n*, 970 F.2d 421, 425 (8th Cir.1992). The Court must also liberally construe those allegations. *DeWit*, 879 F.Supp. at 959 (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A court should review only the pleadings in addressing a motion to dismiss to determine whether they state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6); *DeWit*, 879 F.Supp. at 959–60. Using these standards, the Court now considers the contentions made in Defendant's current motion to dismiss Plaintiff's fraud claim.

### B. Defendant's Motion to Dismiss Count II—Fraud

Generally, Asbury Square claims Amoco had no intention of performing its obligation at the time it made the promises in the 1998 Letter. Asbury Square provides several allegations in support of this in its Second Amended Complaint. Asbury Square also avers that Amoco had an ulterior motive in making the promises in the 1998 Letter, the alleged proof being the manner in which Amoco used the indemnification letter.

Meanwhile, Amoco has moved to dismiss Count II for failure to plead fraud with particularity. *See* Fed.R.Civ.P. 9(b). Amoco contends Asbury Square has not pleaded with the required particularity in its Second Amended Complaint, but has instead merely alleged a breach of contract. Amoco further asserts the fraud claim should be dismissed because, at its essence, it is merely based on Asbury Square's understanding of a contract clause. Amoco thus contends the allegations made by Asbury Square are insufficient to withstand a motion to dismiss.

---

4. Additional facts were included in the Background Facts section of the Court's October 7 Order. *See* October 7 Order, 218 F.R.D. at 184–87. The Court finds it unnecessary to repeat those in this order. The Court will note additional allegations made and facts averred in the Second Amended Complaint as those are relevant to the determination of the issues in the present motion.

### 1. Pleading Fraud Under Rule 9(b) [5]

█ While recognizing that Rule 9(b) should be harmonized with Rule 8 of the Federal Rules of Civil Procedure, *see Schaller Tel. Co.*, 298 F.3d at 746 (citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir.2001)), Rule 9(b) does impose additional obligations on a party bringing a claim for fraud.[6] *DeWit*, 879 F.Supp. at 989 (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.1994)); *see also Schaller Tel. Co.*, 298 F.3d at 746 (providing that a higher degree of notice is required in pleading fraud). According to Rule 9(b), a claim for fraud must aver with particularity the circumstances purportedly constituting the fraud. *Brown v. North Central F.S. Inc.*, 987 F.Supp. 1150, 1155 (N.D.Iowa 1997). "Under the rule, allegations of fraud in a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* These have been described as "time, place, and content" requirements. *Id.* (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547).

█ Therefore, when pleading fraud, a plaintiff must aver the circumstances constituting fraud with particularity. *Commercial Prop. Inv., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir.1995). The Eighth Circuit has found "circumstances" to include matters such as " 'the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.' " *Id.* (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* Scienter, however, may be pleaded in conclusory fashion with the caveat that the party pleading fraud "must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading." *Lucia v. Prospect Street High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir. 1994). *See also Brown*, 987 F.Supp. at 1156 (finding that even though under Rule 9(b) certain conditions of the mind such as malice, intent, and knowledge may be averred generally, there is still a heightened requirement to allege facts making it reasonable to believe defendants knew that their statements were false or misleading at the time they were made).

█ "Proving fraud under Iowa [law] is no simple matter." *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank*, 221 F.Supp.2d 1000, 1007 (S.D.Iowa 2002). To show fraud in Iowa,[7] a plaintiff needs to establish the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damage." *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987); *see also Schaller Tel. Co.*, 298 F.3d at 745–46 (citing *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001)). In Iowa, a person's statement of intent to perform a future act is actionable *only if* that person had an intent not to perform *at the time* the statement was made. *Robinson*, 412 N.W.2d at 565; *see also Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997); *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1402 (8th Cir.1993).

---

5. This section details the requirements of Rule 9(b) as delineated by the Court in its October 7 Order. There appears little dispute, *see* footnote 6, *infra*, the prior order accurately summarized the applicable law. For purposes of clarity and convenience, the Court restates that section in this order.

6. The Plaintiff again argues that the decision in *Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 740 (8th Cir.2002), restricts the applicability of *Brown v. North Central F.S. Inc.*, 987 F.Supp. 1150, 1155 (N.D.Iowa 1997).

The Court found in the October 7 Order that *Schaller Tel. Co.* did not abrogate the Rule 9(b) pleading requirements enunciated in *Brown*. October 7 Order, 218 F.R.D. at 188 n. 7. That determination remains unchanged.

7. "A federal court, sitting in diversity, applies the relevant state's substantive law governing the burden of proving fraud at trial." *Northwest Bank & Trust Co.*, 221 F.Supp.2d at 1007 (citing *Roberts v. Francis*, 128 F.3d 647, 650 (8th Cir. 1997)).

A mere broken promise is not actionable as long as the promise is made in good faith and with the expectation of carrying out that promise. *Magnusson Agency v. Public Entity Nat'l Co.-Midwest,* 560 N.W.2d 20, 28–29 (Iowa 1997); *Robinson,* 412 N.W.2d at 565; *Irons v. Cmty. State Bank,* 461 N.W.2d 849, 854 (Iowa Ct.App.1990); *see also Siouxland Energy & Livestock Coop. v. Gaylor,* 2002 WL 31749490, at *6 (N.D.Iowa Dec.9, 2002). "Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract would give rise to an action for fraud." *City of McGregor v. Janett,* 546 N.W.2d 616, 619 (Iowa 1996). "Similarly, '[a] contract claim cannot be converted into a fraud claim, even when there is a bad faith breach of the contract.'" *Siouxland Energy & Livestock Coop.,* 2002 WL 31749490, at *7 (quoting *Northwest Airlines, Inc.,* 111 F.3d at 1393). Prosser expounds on this in his treatise on the law of torts stating,

Unless the present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or his repudiation of the promise soon after it is made, with no intervening change in the situation, or his failure even to attempt any performance, or his continued assurances after it is clear that he will not do so.

W. Prosser, *The Law of Torts* § 109, at 730–31 (4th ed.1971).

Iowa law does allow for a fraud action when a party does not intend to perform a commitment at the time the promise is made. *See City of McGregor,* 546 N.W.2d at 619 ("statement of intent to perform a future act is actionable only when spoken with the existing intention not to perform"). In order to state a claim for fraud under this exception, a party must *"plead facts from which it could*

reasonably be inferred that the promisor had no such intention to perform at the time the promisor made [the] allegedly false representations." *Brown,* 987 F.Supp. at 1157–58.

The court in *Brown v. North Central F.S., Inc.* found that evidence from which a court could infer an intention not to perform would include:

facts from which it could be inferred that, at the time the promises were made, the defendant would have been unable to perform its promises or had already undertaken action that was inconsistent with its commitments, ... or that the defendant was insolvent, knew it could not perform the promises, repudiated the promises soon after they were made, with no intervening change in the situation, failed even to attempt any performance, or continued to offer assurances after it was clear that it would not perform as promised.

*Id.* at 1159 (citing *Int'l Travel Arrangers,* 991 F.2d at 1403, and *Robinson,* 412 N.W.2d at 566). Mere conclusory statements are insufficient; the party pleading fraud must present "affirmative evidence" by pleading specific facts from which an inference can be drawn that there was no existing intent to perform at the time the promise was made. *See id.* at 1157–58 (citing *Int'l Travel Arrangers,* 991 F.2d at 1403). Thus, without some showing, through specific factual averments, of an intent not to perform at the time a promise is made, a pleading of fraud necessarily fails under Rule 9(b) for not meeting the particularity requirement.

The Court must determine whether, taking all of Asbury Square's allegations as a whole, the Court can infer that Amoco had no intention of performing the promises it made in its 1998 Letter at the time those representations were made. The role of the Court at this time is not to determine whether fraud occurred, but whether there is an inference of fraud based on factual averments. It is not an assessment of the quality or strength of the evidence, but a determination of whether a pleading minimum has been reached.

As this is a motion to dismiss, the factual allegations made by Asbury Square will be taken as true, *see Cruz,* 405 U.S. at 322, 92 S.Ct. 1079; *Concerned Citizens of Neb.,* 970

F.2d at 425, and the Court will liberally construe those allegations. *See Conley,* 355 U.S. at 45–46. In addition, while the Court will consider conduct occurring after the promises were made, any inference of a lack of intent from that conduct must be reasonable. *See Brown,* 987 F.Supp. at 1157–58 (stating a party must *"plead facts* from which it could reasonably be inferred that the promisor had no such intention to perform at the time the promisor made [the] allegedly false representations"); *see also Kunkle Water & Elec. v. City of Prescott,* 347 N.W.2d 648, 654 (Iowa 1984) (" 'intent, being a state of mind ... is usually established *by appropriate inference and presumption* from the overt acts provided.' ") (quoting *Hall v. Wright,* 261 Iowa 758, 771–72, 156 N.W.2d 661, 669 (1968)).

### a. Purpose of Rule 9(b)

■ Asbury Square begins its resistance with the argument that its pleadings fulfill the purpose of Rule 9(b), and that this alone is sufficient to pass muster, seemingly regardless of whether the actual requirements of the Rule have been met. This Court has previously noted that "[t]he purpose of the heightened pleading standard encompassed in Rule 9(b) is to provide the defendant with notice sufficient for the defendant to provide an adequate answer." October 7 Order, 218 F.R.D. at 194; *Nuss v. Central Iowa Binding Corp.,* 284 F.Supp.2d 1187, 1195 (S.D.Iowa 2003) (citing *DeWit,* 879 F.Supp. at 989). In addition, the Eighth Circuit has indicated that Rule 9(b) must be harmonized with the notice pleading requirement. *See Schaller Tel. Co.,* 298 F.3d at 746 (stating that "a pleading alleging fraud need not provide anything more than notice of the claim.").

Despite this obvious purpose, Rule 9(b) does postulate a heightened pleading standard. *See id.* ("[A] pleading alleging fraud ... must contain 'a higher degree of notice ....' ") (quoting *Abels,* 259 F.3d at 920). The Court recognized this in the October 7 Order in reconciling Plaintiff's understanding of *Schaller* with other Rule 9(b) jurispru-

dence. *See* October 7 Order, 218 F.R.D. at 188 n. 7. The Rule itself provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity."* [8] Fed. R.Civ.P. 9(b) (emphasis added). This standard differs from Rule 8 notice pleading. An assertion of fraud appropriately compels a more stringent pleading standard due to the very serious nature of such an allegation. The heightened pleading standard of Rule 9(b) protects a defendant's reputation, minimizes "fishing expeditions", and provides adequate notice to the adverse party. *See De Wit,* 879 F.Supp. at 972 (citations omitted).

With its argument, Plaintiff is attempting to relax the heightened pleading standard of Rule 9(b). Accepting such a position would undermine Rule 9(b) and deprive potential defendants of an important procedural safeguard. This would frustrate both the language of the Rule and its apparent policy. This Court cannot accept Plaintiff's contentions that it has met the broad purpose of the Rule merely because Amoco "knows the nature of the claims against it." *See Siouxland Energy & Livestock Coop.,* 2002 WL 31749490, at *5 (rejecting plaintiff's urging "to adopt a 'common sense approach' as to whether the pleading is sufficient because ... [defendant] knows the nature of the claims against it, the time frame, the identity of the person making the misrepresentation ..., and to whom the statements were made."). Thus, the Court will look at the factors outlined in the *Brown* decision and in this Court's October 7 Order to determine whether Asbury Square has met its burden under Rule 9(b) to plead "the circumstances constituting fraud ... with particularity."

### b. *Brown* Factors: The Totality of the Allegations

■ Evidence from which the Court could infer an *intention not to perform* includes the following:

the defendant would have been unable to perform its promises[,] ... had already undertaken action that was inconsistent with its commitments, ... that the defen-

---

**8.** The Court notes that Rule 9(b) does allow "[m]alice, intent, knowledge, and other condition of mind of a person" to be "averred *generally."* Fed.R.Civ.P. 9(b) (emphasis added).

dant was insolvent, knew it could not perform the promises, repudiated the promises soon after they were made, with no intervening change in the situation, failed even to attempt any performance, or continued to offer assurances after it was clear that it would not perform as promised.

*Brown,* 987 F.Supp. at 1159 (internal citations omitted). Asbury Square argues that its allegations meet this requirement.

■ Asbury Square makes five principal assertions to support its contention that "Amoco never had any intention of honoring its commitment to pay the costs of cleaning up the contamination which it had caused on the Asbury Square property." Asbury Square states the following in paragraph 63 of its Second Amended Complaint:

(1) At the time Amoco made its promises it knew that it would be unable to perform the same without, at a minimum, undertaking significantly greater clean-up efforts, including the application of a different remediation technology, or at least implementing a remediation system that was *designed* to clean up the Asbury Square property. *At no time* following its promises did Amoco undertake *any* efforts to modify its remediation technology at this site, or to engage outside consultants to do so.

(2) At the time Amoco made its promises, it had already undertaken action that was inconsistent with its commitments, including its decision to install a system that is not designed to clean up the property, followed by its decision *not* to act upon the January 30 1997 report of its hydro geologist, which concluded that the AS/SVE system was having *no effect* upon cleaning up the soil contamination underlying portions of the mall building.

(3) Amoco attempted to repudiate its promises soon after they were made with no intervening change in the situation, including its claims to E.T. Holdings and to the Court that it is not "necessary" to excavate the contaminated soil underlying the mall building,

and that it would not do so, even though it knew that this was the only technology available and proposed by any qualified hydro geologist to effect a clean up of the property;

(4) Following Amoco's promises, it failed even to attempt any performance, as evidenced [by] the fact that it made *absolutely no* changes to its technology, nor did it make any efforts to engage any outside engineering firm to do so on its behalf, but instead continued to operate its existing AS/SVE system even though it knew this system was inadequate to clean up the property, was not designed to do so, and that the levels of benzene contamination underneath the mall were actually *increasing subsequent to Amoco having made its promises;* and

(5) Following Amoco's promises, it continued to offer assurances after it was clear it would not perform as promised, including its assurances to E.T. Holdings and the Court that "We're not saying we're only going to clean up the property so far as the State orders. We're simply saying we're going to clean up the property, if necessary, in an orderly fashion ...", as well as its assurances in correspondence to E.T. Holdings dated August 26, 2002, stating that Amoco will continue its remediation work by simply operating its existing AS/SVE system (which it knows was not designed to clean up the Asbury Square property, and has been repeatedly shown to be insufficient for that purpose).

Second Amended Complaint, ¶ 63(1)-(5). In addition to these statements, Asbury Square included factual assertions in its Second Amended Complaint to support the contentions stated in paragraph 63. The Court will assess the factual assertions and the paragraph 63 contentions using the factors delineated in *Brown* to determine whether Asbury Square has complied with Rule 9(b)'s requirements for pleading fraud.

### i. Unable to Perform

None of the paragraph 63 contentions or other factual assertions goes to the issue of

whether Amoco would be able to perform the commitments it made in the 1998 Letter. Indeed, this is not asserted by Plaintiff in its Second Amended Complaint, and the Court found in the October 7 Order that Amoco did in fact have the means and ability to perform the promises it made.

### ii. Previously Undertaken Action Inconsistent With Commitments

Asbury Square contends that Amoco undertook actions inconsistent with its commitments in at least two of the paragraph 63 contentions. Second Amended Complaint, ¶ 63(1), (4). As evidence to support this contention, Asbury Square includes in its Second Amended Complaint factual averments related to Amoco's knowledge leading up to the 1998 Letter, Second Amended Complaint, ¶¶ 41(a)-(k), 42–44, and the continued use of an ineffective remediation system with the knowledge that it was not sufficient to fulfill its commitments, Second Amended Complaint, ¶¶ 41(I), (j), 57–59, 62, arguing that Amoco had already attempted to remediate the contamination, that it knew its current system would not comply with the commitments it made in the 1998 Letter, and that the continued use of the ineffective system was inconsistent with the commitments it made.

However, as the factual assertions bear out, Amoco had begun remediation actions, even if such measures are ultimately concluded to be insufficient under the terms of the 1998 Letter. Nothing that was done by Amoco would have made its eventual performance impossible, and Asbury Square has not alleged such. In the October 7 Order, the Court held that "the fact that Amoco's existing remediation system was insufficient, and even accepting that Amoco had knowledge of this, would not necessarily prevent Amoco from performing the contract, either by improving its system or by hiring someone else to do the remediation and clean-up." October 7 Order, 218 F.R.D. at 192. Thus, Plaintiff's contentions and factual assertions on this factor do not support an inference of an existing intent not to perform when the promises were made.

This factor, which seeks actions *previous to* and *inconsistent with* the promise, must be strained to fit the circumstances of this case. While the argument can be made that Amoco then knew what they were doing would not ultimately solve the problem, and that to continue with that procedure would not be *consistent* with the promise, the Court cannot find that Amoco had previously taken action *inconsistent* with the promise.

### iii. Insolvent

None of the paragraph 63 contentions or other factual assertions goes to the issue of whether Amoco was insolvent at the time it made the promises memorialized in the 1998 Letter. Indeed, this is not even asserted by Plaintiff in its Second Amended Complaint.

### iv. Knew It Could Not Perform

On this issue, once again none of the paragraph 63 contentions or other factual assertions goes to the issue of whether Amoco knew it could not perform the commitments in the 1998 Letter at the time it made those promises. Again, this is not asserted by Plaintiff in its Second Amended Complaint as a factor indicating Amoco's alleged fraudulent intent.

### v. Repudiated with No Intervening Change

Asbury Square does contend that Amoco repudiated its commitments under the 1998 Letter with no intervening change in the situation in its paragraph 63 contentions. Second Amended Complaint, ¶ 63(3). As evidence to support this contention, Asbury Square includes in its Second Amended Complaint factual averments purportedly showing Amoco's repudiation by its claims that removal of the soil was unnecessary when it knew otherwise. Second Amended Complaint, ¶¶ 48, 60–61.

As the Court held in the October 7 Order, the allegations that Amoco's system was not adequate to clean up the property and that Amoco declined to undertake the measures Asbury Square asserts would result in the clean up of the property were insufficient to support the fraud claim. Octo-

ber 7 Order, 218 F.R.D. at 193. For a repudiation to be effective, it must be both clear and unequivocal that the party intended to repudiate its obligations. *See Anderson Excavating & Wrecking Co. v. Sanitary Imp. Dist. No. 177*, 265 Neb. 61, 654 N.W.2d 376, 383 (2002). That did not occur in the present case. Here, the purported repudiation indicates nothing more than a disagreement as to what the 1998 Letter required of Amoco. *See* October 7 Order, 218 F.R.D. at 193–94. Indeed, the exchange between counsel for the parties just three days after the 1998 Letter pointed to by Plaintiff was nothing more than mere colloquy as to what would be necessary and is not evidence of a repudiation.

Moreover, Asbury Square knew the system that was being used by Amoco and could have clarified the commitments in the 1998 Letter as requiring something more when the parties adopted this letter into the settlement agreement. It cannot now say that the 1998 Letter explicitly required removal of the contaminated soil and that Amoco's refusal to do the same constituted a repudiation of the agreement, indicating Amoco had no intent to perform when it entered into the contract. Amoco very well could have had the intent to perform its commitments *as it understood them*. Thus, Plaintiff's contentions and factual assertions on this factor do not support an inference of an existing intent not to perform when the promises were made.

### vi. Failed to Even Attempt Performance

Asbury Square contends that Amoco failed to even attempt performance in the same two paragraph 63 contentions discussed in factor (ii) above. Second Amended Complaint, ¶ 63(1), (4). Again, as evidence to support this contention, Asbury Square includes in its Second Amended Complaint factual averments related to Amoco's knowledge leading up to the 1998 Letter, Second Amended Complaint, ¶¶ 41(a)-(k), 42–44, and the continued use of an ineffective remediation system with the knowledge that it was not sufficient to fulfill its commitments, Second Amended Complaint, ¶¶ 41(I), (j), 57–59, 62,

arguing that because Amoco knew its existing remediation system was not adequate and then failed to even attempt any other form of remediation or clean-up, Amoco never had any intention of performing its obligations under the 1998 Letter.

The Court previously stated that the " 'fact [that] the agreement was not performed does not alone prove the promissor did not intend keeping it when it was made.' " October 7 Order, 218 F.R.D. at 194 (quoting *Lamasters v. Springer*, 251 Iowa 69, 74, 99 N.W.2d 300, 303 (1959)). The Court also previously held that the allegation that "Amoco undertook no efforts to substantially alter the technology being used in connection with its existing system" was insufficient on its own to sustain the fraud claim. October 7 Order, 218 F.R.D. at 194.

In the instant case, however, Plaintiff's new factual averments from the Second Amended Complaint do provide some evidence that Amoco failed to even attempt to perform its obligations. In the first Amended Complaint, Asbury Square made the following *general* assertion:

Despite Amoco's knowledge at the time the representation was made that its existing remediation system was insufficient to clean up the property, and indeed was not designed to do so, at no time following its representation did Amoco undertake any efforts to substantially alter the technology being used in connection with the existing system, notwithstanding the fact that it possessed the resources and ability to do so.

Amended Complaint, ¶ 18(b). In its Second Amended Complaint, Asbury Square made a similar general assertion but additionally included factual averments in support of the above-stated contention.

The Court notes two specific facts as particularly poignant on this point. First, at paragraph 41(j), Asbury Square states the following:

Amoco knew that the AS/SVE system it had chosen to install not only was not designed to clean up the Asbury Square property, but indeed *would not clean up the Asbury Square property*. This fact was confirmed on January 30, 1997, when

Amoco received from its expert hydro geologist (SECOR International, Inc.) a report on the efficacy of the AS/SVE system. The data contained in said report conclusively demonstrated to Amoco that the AS/SVE system was having *no effect* on cleaning up the severe contamination which exists in the soil underlying portions of the shopping mall building.

Second Amended Complaint, ¶ 41(j). Second, at footnote 2 of paragraph 45, Asbury Square made the following factual statement:

On May 27, 1998, Amoco's corporate representative testified at trial that the company was aware that its AS/SVE system was having "0.00" effect on cleaning up a large portion of the contaminated soil underlying the shopping mall building, Amoco's representative further acknowledged that its own experts had confirmed that the level of benzene contamination found in this unaffected area was 12,200 parts per billion, or *2,440 times the Iowa DNR "corrective action level" of 5 parts per billion.* (Trial Transcript, pp. 1356–61). Amoco's corporate representative further testified that Amoco had not made *any* modifications to its AS/SVE system, much less chosen to employ a different clean-up technology, in response to the receipt of this information approximately sixteen months prior. Amoco's corporate representative further testified that "[the existing system] probably does need to be modified," and agreed that it would be "prudent" to do so, in light of the fact that the system was not cleaning up the Asbury Square property. (Trial Transcript, p. 1394). No such modifications were made.

Second Amended Complaint, ¶ 45 n. 2.

These two factual assertions, coming from Amoco's own expert and corporate representative,[9] indicate the level of Amoco's knowledge as it existed when it tendered the 1998 Letter. The fact that "no ... modifications were made" despite the promises in the 1998 Letter, in conjunction with the evidence of Amoco's knowledge, supports the inference that Amoco made no attempt to fulfill those promises. Amoco knew its existing system was insufficient to effect a broad and complete clean-up of the hydrocarbon contamination, Amoco then promised to do "any and all necessary ... remediation and clean-up of hydrocarbon contamination", and then Amoco proceeded to make no changes to the existing system. This is evidence, albeit just north of the minimum threshold inference, of Amoco's alleged fraudulent intent when it engendered the promises in the 1998 Letter.

While Amoco argues that it did attempt to perform its obligations as it understood them, the factual averments support the inference that Amoco did not in fact attempt performance of its obligations in the 1998 Letter. Thus, Plaintiff's contentions and factual assertions on this factor do support an inference of an existing intent not to perform when the promises were made.

### vii. Continued to Offer Assurances After Clear Would Not Perform

In the final contention from paragraph 63, Asbury Square asserts that Amoco continued to offer assurances after it was clear it would not perform. Second Amended Complaint, ¶ 63(5). The only apparent evidence to support this contention is included as part of that same subparagraph, where Asbury Square points to a portion of the trial transcript and a letter dated August 26, 2002, to show that Amoco continued to offer assurances after it was clear it would not perform. Second Amended Complaint, ¶ 63(5).

As a close look at these two statements makes clear, neither significantly supports Plaintiff's position. Amoco, through its trial counsel, did assure the trial court and E.T. Holdings that it was "going to clean up the property, if necessary, in an orderly fashion." There is nothing to indicate this statement was made at a time when it was clear Amoco would not, or could not, perform its obligations under the 1998 Letter.

The second statement relied upon by Asbury Square is closer on this issue. In the August 26, 2002, letter, Amoco allegedly states it would continue remediation of the site by operating the existing system. As

9. While the Second Amended Complaint does not specifically identify the Amoco representative, it was apparent at oral argument this individual is readily identifiable in the prior record.

the Court reiterates above, the continued use of the existing system does not on its own show Amoco did not intend to perform its commitment at the time it made it. *See also* October 7 Order, 218 F.R.D. at 189. However, Amoco made this assurance *after* it was clear the existing system was insufficient and that the dangerous air quality conditions at the Asbury property were actually getting worse. Thus, while Plaintiff's contentions and factual assertions on this factor do not alone support an inference of an existing intent not to perform when the promises were made, when considered with the totality of the allegations, and specifically in conjunction with the factor discussed immediately above that Amoco never attempted performance, this factor does support the Court's ultimate determination that Plaintiff's allegations meet the minimum threshold for pleading fraud under Rule 9(b).

### c. Use of Letter as Evidence of Bad Faith

In addition to the *Brown* factors,[10] Plaintiff has again alleged facts in an apparent attempt to show Amoco did not make the promises in the 1998 Letter in good faith. Asbury Square alleges that Amoco made the promises in order to affect the outcome of the litigation, either by lowering any damages the jury awarded or in later seeking remittitur of said damages from the trial judge. Second Amended Complaint, ¶¶ 49, 51–56. Asbury Square alleges that once the letter accomplished its purpose,[11] Amoco did nothing further to comply with the promises it made.

The Court dealt with this issue in the October 7 Order and found it insufficient to support a claim for fraud. *See* October 7 Order, 218 F.R.D. at 191–92. Asbury Square has not introduced anything new to this ar-

gument, and the Court finds it unnecessary to revisit the issue.

### 2. Interpretation of 1998 Letter Commitments

Amoco contends that the heart of this matter is the understanding of the commitments encompassed by the 1998 Letter, and primarily the interpretation of what is "necessary". Asbury Square seems to indicate that it feels it is necessary for Amoco to "remove and replace all contaminated soil with groundwater and clean fill." Mean-while, Amoco contends that lesser measures could accomplish the remediation and clean-up and that the extreme measures of tearing down the mall, removing and replacing the contaminated soil, and rebuilding the mall was not necessary and the only manner in which it could fulfill its obligations under the 1998 Letter.

It seems evident that a party cannot sustain a fraud claim based on its own misinterpretation of an unambiguous contract clause. *See Brown v. North Central F.S., Inc.*, 173 F.R.D. 658, 669 (N.D.Iowa 1997) (finding that a pleading stating what plaintiff understood is insufficient because fraud will only lie where defendant affirmatively misrepresented or failed to make a required disclosure). Moreover, determination of the correct interpretation where differing interpretations are held by the parties seems to be part of the contract action and not a basis for a separate claim of fraud. *See Glynwill Invs., N.V. v. Prudential Sec., Inc.*, 1995 WL 362500, at *7–8, *9 n. 4 (S.D.N.Y. June 16, 1995) (stating that "an allegation concerning the parties' differing constructions of the contract terms ... is part and parcel of the contract claim, not a separate cause of action sounding in fraud."); *Mass. Bay Ins. Co. v. Stamm*, 256 A.D.2d 181, 683 N.Y.S.2d 20, 21–22 (N.Y.A.D. 1 Dept.1998) (refusing to permit fraud claim where determination involved in-

---

**10.** The Court finds the factors listed in *Brown* are not exhaustive, and the Court may analyze the present allegation of fraud using other relevant factors to determine whether they support Asbury Square's proposition that Amoco had no existing intent to perform when it entered into the 1998 Letter.

**11.** The trial result suggests the letter was rather ineffective with the jury, but as noted in the

October 7 Order, the trial judge did order remittitur of the jury award by $13 million. The court stated in its order granting motion for remittitur that "Amoco has now made a concerted effort and spent considerable money to clean up a problem which it could have fixed at an earlier date. The Court is convinced that Amoco is making a belated, but good faith effort, to address that problem."

terpreting what was reasonable under a settlement agreement as such an issue was a contract issue rather than a fraud issue).

While accepting that misinterpretation of an unambiguous contract cannot form the basis of a fraud claim, the Court finds that is not the case here. The Court reiterates the finding of the October 7 Order that "Asbury Square is not alleging fraud based on its understanding of the parties' agreement." October 7 Order, 218 F.R.D. at 194. While the interpretation of the terms in the 1998 Letter, particularly what is "necessary", may ultimately be determinative on the breach of contract claim, Asbury Square is basing its fraud-claim on the contention that Amoco did not intend to fulfill its obligations when it made them as part of the 1998 Letter.

### C. Brief Summation

Despite Amoco's contentions, the Court must find the Second Amended Complaint does plead fraud with sufficient particularity. With the additional allegations made by Asbury Square, the Court can infer from specific factual averments that Amoco had no intent to perform the promises in the 1998 Letter at the time those promises were made. While some of Plaintiff's contentions did little more than rephrase the same allegations found insufficient in the October 7 Order, Asbury Square does add some specific factual averments that, when taken in light of the totality of the allegations, do support the necessary inference to state a fraud claim.

Accepted as true for purposes of the current motion, Amoco knew the existing system was not designed to do more than eliminate the high benzene levels and further knew the AS/SVE system in place was ineffective at the time it made its promise to Plaintiff's predecessor that it would undertake any and all necessary remediation and clean-up from the contamination. That promise is not limited by its language, and the Court cannot construe the promises other than by the stated language. Despite this knowledge, Amoco did nothing to improve on or replace the ineffective system. Asbury Square offered specific factual averments of these facts to show Amoco failed to even attempt performance. Amoco then later assured Asbury Square that it would perform despite the evidence that it never even attempted the performance it allegedly promised.

While most of the other additional factual averments and conclusory assertions added little to Plaintiff's position, and the Court had previously discarded the same or similar arguments as insufficient under Rule 9(b), when looking at the totality of the allegations in conjunction with the new factual averments supporting an inference of fraud under the *Brown* factors, the Court finds the Second Amended Complaint filed by Asbury Square avers facts sufficient to support the inference Amoco had no intent to perform when it made its promise. This is enough under Rule 9(b) to plead fraud.

### CONCLUSION

As the preceding discussion indicates, Plaintiff's Second Amended Complaint meets the requirements set out in Rule 9(b). Consequently, the Court **denies** Defendant's Motion to Dismiss (Clerk's No. 34).

**IT IS SO ORDERED.**